John C. HUTCHINSON, Plaintiff,

v.

BENTON CASING SERVICE, INC., Income Security Corporation, Inc., and Louisiana Oilfield Contractors Association, Defendants.

Civ. A. No. E84–0129(L).

United States District Court, S.D. Mississippi, E.D.

Oct. 9, 1985.

---

**832**

Mark S. Howard, Waynesboro, Miss., for plaintiff.

T. Mark Sledge, Jackson, Miss., Gregory E. Tonore, Lafayette, La., for defendant Louisiana Oilfield Contractors Ass'n.

Brooke Ferris, Laurel, Miss., for defendant Benton Casing Service, Inc.

Dan R. Wise, Hattiesburg, Miss., for defendant Income Sec. Corp., Inc.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

This cause is presently before the Court upon the defendant, Income Security Corporation, Inc.'s (Income), motion for partial summary judgment. Income contends that the recent decisions of the United States Supreme Court and the Fifth Circuit Court of Appeals hold that the plaintiff is not entitled to extra-contractual damages under the provisions of the Employee Retirement Income Security Act of 1974, (ERISA), 29 U.S.C. § 1001 *et seq.* The cause of action arises out of an alleged wrongful termination of medical benefits under an employee benefit plan established under ERISA. After careful review of the applicable law and the submitted briefs, the Court requested affidavits from all the parties addressing the question of whether the employer, Benton Casing Service, Inc.'s ERISA plan was self-funded, self-insured, or was a plan which was funded by the purchase of insurance from a commercial insurance company.

The plaintiff originally brought this action in the Circuit Court of Wayne County, Mississippi. The plaintiff sought $175,-000.00 compensatory and exemplary damages and asserted claims under Mississippi law for "bad faith" breach of contract. The action was subsequently removed to this Court by the defendant, Louisiana Oilfield Contractors Association (LOCA). Thereafter, the plaintiff was allowed to amend his complaint. In his amended complaint, in addition to those claims asserted above, the plaintiff asserted various claims under ERISA; breach of 29 U.S.C. § 1109(a), "Liability for breach of fiduciary duty" and breach of 29 U.S.C. § 1307, "Payment of premiums." The Court will first determine whether the plaintiff's claim for extra-contractual damages for the

alleged breach of § 1109(a) and § 1307 is pre-empted by ERISA. The Court's second determination is whether the plaintiff's tort and contract claims are saved from pre-emption by 29 U.S.C. § 1144(b)(2)(A) or are pre-empted by the so-called "deemer clause". 29 U.S.C. § 1144(b)(2)(B).[1]

There can be no doubt that the law dispositive to the above issues can be found in *Massachusetts Mutual Life Ins. Co. v. Russell,* — U.S. —, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Metropolitan Life Ins. Co. v. Massachusetts,* — U.S. —, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), and *Dedeaux v. Pilot Life Ins. Co.,* 770 F.2d 1311 (5th Cir.1985).

The *Russell* decision is determinative of the first issue above. In *Russell,* the Supreme Court addressed the issue of whether under ERISA, a fiduciary to an employee benefit plan may be held personally liable to a plan participant for extra-contractual damages caused by improper or untimely processing of benefit claims. The respondent, Doris Russell, was a claims examiner for Massachusetts Life Insurance Company and also was a beneficiary under two employee benefit plans, both governed by ERISA. Russell became disabled with back ailments in May, 1979 and received plan benefits until October, 1979 when a disability committee terminated her benefits. Russell requested a review of that decision alleging a psychosomatic disability. A second physician confirmed that Russell was temporarily disabled and she was reinstated benefits. Two days later retroactive benefits were paid in full. She brought a bad faith claim in the California state courts based on state law and on ERISA. Massachusetts Mutual removed the case to United States District Court for the Central District of California. The District Court held that state law claims were pre-empted by ERISA and that ERISA barred any claims for extra-contractual damages and punitive damages arising out of the original denial of plaintiff's claims

for benefits under the Salary Continuance Plan and the subsequent review thereof. The Court of Appeals agreed with the District Court that state law causes of action were pre-empted by ERISA but held that her complaint stated a claim under ERISA. The Court read § 1109(a) of ERISA to authorize "such other equitable or remedial relief as the Court may deem appropriate" as giving it "wide discretion as to the damages to be awarded", including compensatory and punitive damages. *Russell v. Massachusetts Mutual Life Ins. Co.,* 722 F.2d 482, 490–491 (9th Cir.1983). The Supreme Court reversed.

The Court held that § 1109(a) does not provide for an award of extra-contractual damages to a beneficiary. The Court also responded to the plaintiff's argument that a private right for extra-contractual damages should be implied even if not expressly authorized by ERISA. The Court's response was that " 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.' *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94 [101 S.Ct. 1571, 1582, 67 L.Ed.2d 750] (1981). 'The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.' *California v. Sierra Club,* 451 U.S. 287, 297 [101 S.Ct. 1775, 1781, 68 L.Ed.2d 101] (1981)." *Russell, supra,* — U.S. at —, 105 S.Ct. at 3092.

Finally, the Court cited to the six carefully integrated civil enforcement provisions found in § 1132(a) as providing strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

We are reluctant to 'fine-tune' an enforcement scheme crafted with such evident care as the one in ERISA. As we stated in *Transamerica Mortgage Advisors, Inc. v. Lewis* (TAMA), 444 U.S. 11,

---

**1.** All statutory citations hereinafter refer to Title 29 of the United States Code unless otherwise

indicated.

19 [100 S.Ct. 242, 246, 62 L.Ed.2d 146] (1979): '[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' See also *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571–574 [99 S.Ct. 2479, 2486–2488, 61 L.Ed.2d 82] (1979). 'The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.' *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S., at 97 [101 S.Ct., at 1583].

In contrast to the repeatedly emphasized purpose to protect contractually defined benefits, there is a stark absence—in the statute itself and in its legislative history—of any reference to an intention to authorize the recovery of extra-contractual damages. Because 'neither the statute nor the legislative history reveals a congressional intent to create a private right of action ... we need not carry the *Cort. v. Ash* inquiry further.' *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S., at 94, n. 31 [101 S.Ct., at 1582, n. 31].

\* \* \* \* \* \*

Thus, the relevant text of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in § 409(a) [§ 1109(a)] Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims.

*Russell, supra,* —— U.S. at ——, 105 S.Ct. at 3093.

The plaintiff's Second Amended Complaint alleges that the defendant, Benton Casing Service, Inc., (Benton), as named fiduciary under the ERISA plan, owed a fiduciary duty to the plaintiff and other plan participants. The paragraph further alleges that the defendant, Benton, breached the fiduciary duties and obligations it owed to the plaintiff. The complaint paragraph does not specifically assert that the cause of action arises under 29 U.S.C. § 1109(a). Assuming *arguendo* that the plaintiff has asserted a claim under § 1109(a) it is clear that *Russell* would preclude the recovery of extra-contractual damages. Whether plaintiff's state law cause of action for breach of fiduciary duty is pre-empted will be discussed later herein.

The plaintiff has also asserted "[t]hat pursuant to the terms and provisions of 29 U.S.C. Section 1307, the Defendants, Income Security Corporation, Inc., and LOCA, should not have terminated Plaintiff's ERISA Plan coverage because of the failure of Defendant, Benton Casing Service, Inc., to pay the premiums." Second Amended Complaint, p. 5. The plaintiff seeks both compensatory and exemplary damages for these acts of the defendants.

Section 1307 is just one section in ERISA's insurance termination program. ERISA's insurance termination program provides for the payment of vested pension benefits when a plan is terminated with assets which are insufficient to pay the benefits in full. The statute establishes within the Department of Labor a corporation, the Pension Benefit Guaranty Corporation (PBGC) that administers the pension plan termination program. PBGC guarantees the payment of benefits subject to the limit of the lesser of the employee's average wages during his highest paid five years, or $750 per month. If the plan has not been in effect for five years or more, the coverage is prorated. 29 U.S.C. § 1322. To pay for this termination insurance the plan administrator of each plan is required to pay the PBGC a premium. 29 U.S.C. § 1307.

There are several problems with the plaintiff's assertion of a breach of § 1307. Section 1307 states in pertinent part that "[t]he plan administrator of each plan shall pay the premiums imposed by the corporation under the subchapter with respect to that plan when they are due." It appears that any breach of this statute would give rise to a cause of action by the corporation, the PBGC, and not the plan beneficiary, the plaintiff. However, the in-

surance termination program as a whole benefits the beneficiary. The statutes provide for suits against the PBGC; 29 U.S.C. § 1303(f) by any participant, beneficiary, plan administrator or employee adversely affected by the corporation (the PBGC). There is also a provision whereby

> [a] plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action *for appropriate legal or equitable relief,* or both.

29 U.S.C. § 1451(a)(1). (emphasis added). This is clearly not a suit against the PBGC as it is not a party hereto. Furthermore, the plaintiff's complaint does not sufficiently state a cause of action under § 1451(a)(1). Even if the Court were to liberally construe the plaintiff's pleadings it is clear that *Russell* would preclude recovery of extra-contractual damages under 29 U.S.C. § 1451(a)(1).

The second issue which needs to be decided in this motion is whether the plaintiff's tort and contract claims under Mississippi law are saved from pre-emption by the "insurance saving clause", § 1144(b)(2)(A) or fall within the provisions of the "deemer clause", § 1144(b)(2)(B). The Supreme Court's decision in *Metropolitan Life Ins. Co. v. Massachusetts,* — U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), and the Fifth Circuit's decision in *Dedeaux v. Pilot Life Ins. Co.,* 770 F.2d 1311 (5th Cir.1985) speak to these issues.

The issue before the Supreme Court in *Metropolitan Life Ins. Co. v. Massachusetts, supra,* was whether a Massachusetts statute, Massachusetts Gen.Laws Ann., ch. 175, § 47B (West Supp.1985), was pre-empted by the Employee Retirement Income Security Act of 1974. The Massachusetts statute, a mandated-benefit statute, required that specified minimum mental health care benefits be provided to a Massachusetts resident who is an insured un-

der a general insurance policy, an accident or sickness insurance policy, or an employee health care plan. The Massachusetts statute was designed to address some of the problems encountered in treating mental illness. The Commonwealth felt that its working people needed protection from the high costs for treatment of mental illness and also felt that the voluntary insurance market was not adequately providing mental health coverage. Therefore, the Commonwealth mandated minimum coverage levels to remedy these problems.

Metropolitan and Travelers Insurance Company contended that since ERISA pre-empted the Massachusetts statute (§ 47B) it was unnecessary for them to provide the mandated benefit in any ERISA plan. Thus, the narrow issue presented to the Court was whether the Massachusetts mandatory benefit law was a law "which regulates insurance" within the meaning of § 1144(b)(2)(A) such that it would not be pre-empted by § 1144(a).

Section 1144(a) of ERISA is the broad pre-emption statute and provides for the supercedure of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). However, § 1144(b)(2)(A), the "insurance saving clause" provides that, with one exception, nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). The one exception, the "deemer clause", states that no employee benefit plan or trust established under such a plan with certain exceptions not relevant here, "shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B).

The Court concluded that Massachusetts' mandated benefit laws were laws that regulated insurance thereby falling within the

plain language of ERISA's insurance saving clause. *Metropolitan, supra,* —— U.S. at ——, 105 S.Ct. at 2390. The Court's conclusion is not dispositive of the issues raised in the case at bar. However, the Court's interpretation of the "deemer clause" and its relationship to the "insurance saving clause" is highly probative and important to the question of pre-emption of state law claims. The Court stated in pertinent part as follows:

> By exempting from the saving clause laws regulating insurance contracts that apply directly to benefit plans, the deemer clause makes explicit Congress' intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the saving clause. Unless Congress intended to include laws regulating insurance contracts within the scope of the insurance saving clause, it would have been unnecessary for the deemer clause explicitly to exempt such laws from the saving clause when they are applied directly to benefit plans.

*Metropolitan Life Insurance Co., supra,* —— U.S. at ——, 105 S.Ct. at 2390. In response to the insurers' argument that traditional state laws are subject to the insurance saving clause while laws that regulate the substantive terms of an insurance contract are not saved by § 1144(b)(2)(A) the Court found weak support for the insurer's "rather unnatural reading of the clause" and noted the following:

> We therefore decline to impose any limitation on the saving clause beyond those Congress imposed in the clause itself and in the "deemer clause" which modifies it. If a state law "regulates insurance", as mandated-benefit laws do, it is not preempted. Nothing in the language, structure, or legislative history of the Act supports a more narrow reading of the clause, whether it be the Supreme Judicial Court's attempt to save only state regulations unrelated to the substantive provisions of ERISA, or the insurers' more speculative attempt to read the saving clause out of the statute.

> *We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not.* By so doing we merely give life to a distinction created by Congress in the "deemer clause", a distinction Congress is aware of and one it has chosen not to alter. We also are aware that appellants' construction of the statute would eliminate some of the disuniformities currently facing national plans that enter into local markets to purchase insurance. Such disuniformities, however, are the inevitable result of the congressional decision to "save" local insurance regulation. Arguments as to the wisdom of these policy choices must be directed at Congress.

*Metropolitan Life Insurance Co., supra,* —— U.S. at ——, 105 S.Ct. at 2393. (emphasis added).

The Fifth Circuit's determination and reversal of this Court's decision in *Dedeaux v. Pilot Life Insurance Co.,* 770 F.2d 1311 (5th Cir.1985) relied entirely upon *Metropolitan.* The Fifth Circuit determined that Dedeaux's common law causes of action were not pre-empted by ERISA. In doing so, the Court made apparent certain distinctions which are relevant herein. For instance, in *Dedeaux,* Pilot Life argued that common law causes of action could not be construed to be "law[s] . . . which regulate[ ] insurance;"

> that to hold otherwise would create an irrational and indefensible distinction between plans that are self-insured and those that are insurance-funded. *See supra* n. 2. This result occurs if Dedeaux's claims fall within the saving clause. There is no question that because of the deemer clause, which limits the effect of the saving clause, Dedeaux would have no claims outside of the ERISA scheme if Entex self-insured the Entex Plan. Why, Pilot Life asks, should plan beneficiaries and participants be afforded additional rights and remedies merely because Entex purchased an insurance policy to create the Entex Plan?

*Dedeaux, supra,* 770 F.2d at 1314. The Fifth Circuit noted that the Supreme Court in *Metropolitan* clearly and unequivocally repudiated the argument raised by Pilot Life. *Id.* The Fifth Circuit also emphasized the Supreme Court's recognition that the distinction between insured plans and uninsured plans was a problem Congress needed to face.

> We are left with the unavoidable conclusion that state laws proscribing the same conduct as ERISA may provide a cause of action in place of, in addition to, or coequal with any cause of action available under ERISA. *See Eversole v. Metropolitan Life Insurance Co.,* 500 F.Supp. 1162, 1170 (C.D.Cal.1980). Dedeaux's common law causes of action for Pilot Life's failure to pay disability benefits, therefore, are not pre-empted. We are not unmindful of the practical consequences of this decision. As the Supreme Court stated in *Metropolitan Life,* however, those concerns must be directed to Congress.

*Dedeaux, supra,* 770 F.2d at 1317. The *Eversole* decision cited by the Fifth Circuit best explains the effect of the "deemer clause".

> That clause creates an exception to the savings clause; it prevents an employee benefit plan from being "deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts ..." The deemer clause bars a state from treating a plan as if it were an insurance company because the drafters must have assumed that if the plan were an insurance company, it would still be subject to state law due to the savings clause. The effect of the deemer clause is to prohibit a state from regulating an employee benefit plan even though the plan serves as a self-insurer on its benefits.
>
> Thus, the deemer clause distinguishes between true insurance companies, which are subject to state law, and employee benefit plans, which are exempt from

state regulation even though they exhibit some of the same risk-distributing characteristics as traditional insurance.

*Eversole v. Metropolitan Life Insurance Co., supra,* 500 F.Supp. at 1169. (citations omitted). The issue at bar thus becomes whether the employee benefit plan covering the plaintiff was self-funded, self-insured, within the meaning of the "deemer clause".

The affidavit of Mary Samaha, Secretary-Treasurer of Benton Casing Service, Inc. states in pertinent part as follows:

> 4. The plan was self-funded from employer contributions. No contributions were made by the employees. Premiums on each eligible employee were paid each month by Benton Casing Service, Inc. directly to Income Security Corporation, the plan supervisor. No funds were used by Benton to purchase a group insurance policy from a commercial insurance company for the purpose of finding the plan.
>
> 5. Benton has no knowledge of any plan funds being used to purchase group insurance to fund the plan. As far as Benton is concerned, the plan was self-insured with funds of it and other Louisiana Oilfield Contractors Association's members.

The affidavit of Randy K. Haynie, Executive Director of the Louisiana Oilfield Contractors Association, Inc. (LOCA), avers as follows:

> The Louisiana Oilfield Contractors Association, Inc. Employee Benefit Trust was established under the Employee Retirement Income Security Act, 29 U.S.C. Section 1001, et seq. (E.R.I.S.A.). This trust is a fully self-funded, self-insured program wherein all claims paid are paid from trust funds resulting from premium dollars received by the trust. At all times pertinent to the subject litigation involving John C. Hutchinson, the trust maintained aggregate stop-loss re-insurance and specific stop-loss re-insurance, which re-insurance protected the trust from catastrophic loss. Payments under

the re-insurance protection were payable only to the trust, and not to beneficiaries of or participants in the plan. No premium payments on behalf of Mr. Hutchinson or his dependents were ever made by Mr. Hutchinson himself. All premium payments on behalf of Mr. Hutchinson and his dependents were paid by his employer, Benton Casing Service, Inc.

The affidavit submitted on behalf of the plaintiff by plaintiff's attorney asserts that LOCA and Income formed their own insurance company whereby LOCA members such as Benton Casing could purchase insurance coverage for its employees. It further asserts that Benton could not be deemed a self-insurer and that Benton did not self-insure to a certain monetary limit and purchase a so-called "stop loss" policy to cover any claim over that amount.[2] The plaintiff's affidavit thus concludes by contending that Benton purchased a group insurance policy from LOCA, a commercial insurance company.

■ Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment "is appropriate only where everything in the record demonstrates the absence of a genuine issue of material fact." *Simon v. United States,* 711 F.2d 740, 745 (5th Cir.1983). The burden is on the movant to show his right to summary judgment with such clarity as to leave no room for dispute; that the other party is not entitled to recover under any discernible circumstances. Moreover, all doubts are to be resolved against the moving party. *Id.* The resisting party may not, however, create a genuine dispute simply by alleging that a dispute exists. *Nicholas Acoustics and Specialty Co. v. H & M Construction Co.,* 695 F.2d 839, 844 (5th Cir.1983). "In fact, unsupported allegations or affidavits setting forth 'ultimate or conclusory facts

and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision American Corp.,* 754 F.2d 1212 (5th Cir. 1985). Once the movant shows the court that it is entitled to summary judgment as a matter of law, the burden shifts to the resisting party to show why summary judgment is not proper. *Id.* The non-movant is then obligated to present *competent evidence* setting forth specific facts to illustrate the existence of a genuine issue of material fact for trial. *Id. See Miles v. American Telephone & Telegraph Co.,* 703 F.2d 193, 197 (5th Cir.1983). This the plaintiff has failed to do.

It is clear from a reading of plaintiff's submitted affidavit that the plaintiff is attempting to escape the effects of the "deemer clause". The "deemer clause" protects employee benefits plans by pre-emption of state laws regulating such plans while laws regulating an insurance company or insurance policy purchased from an insurance company are saved from pre-emption. The characterization of LOCA as an insurance company by the plaintiff attempts to save the plaintiff's employee benefit plan from pre-emption. The Court cannot accept such a characterization. The opposing affidavits establish that LOCA is not an insurance company but is a self-funded, self-insured, trust established under an employee benefit plan. As such, the plan falls squarely within the language of the deemer clause. The fact that there is a "stop loss" policy protecting the trust from catastrophic loss does not change this result. The trust was not insured within the meaning of the deemer clause. In any case, the "stop loss" insurer is not a party to this action, nor is the plaintiff in privity with the "stop loss" insurer. The Court therefore holds that the

---

**2.** The court in *Dedeaux* listed the methods by which an employer could create or "fund" employee welfare benefit plans. *See* 29 U.S.C. § 1002(1).

The employer may create or "fund" these plans in any one of three ways: (1) the employer absorbs the entire risk of loss, thereby becoming a self-insurer, (2) the employer pur-

chases a group insurance policy from a commercial insurance company, or (3) the employer self-insures to a certain monetary amount and purchases from an insurance company a so-called "stop loss" policy to cover any claim over that amount.

*Dedeaux, supra,* 1313. Benton Casing Service used the third manner of funding the plan.

plaintiff's common law causes of action are pre-empted by ERISA. 29 U.S.C. § 1144(b)(2)(B). *Metropolitan Life Ins. Co. v. Massachusetts,* —— U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Dedeaux v. Pilot Life Ins. Co.,* 770 F.2d 1311 (5th Cir.1985).

In conclusion, the Court grants partial summary judgment and holds that the plaintiff is not entitled to extra-contractual damages under his ERISA claim and that plaintiff's Mississippi common law causes of action are pre-empted by ERISA.

An Order in accordance with this Opinion shall be provided as set forth in the Local Rules.