**Andy MARTIN, et ux. Debbie Martin, Plaintiffs,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA and Service Merchandise Company, Inc., Defendants.**

**No. J89–0524(W).**

United States District Court.
S.D. Mississippi,
Jackson Division.

May 7, 1991.

---

David Slaughter, Paul D. Snow, III & Assoc., Jackson, Miss., for plaintiffs.

John S. Simpson, E. Stephen Williams, Young Scanlon & Sessums, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

In this lawsuit, the plaintiffs seek actual and punitive damages arising from the termination of medical benefits under an employee welfare benefit plan funded by the Service Merchandise Company, Inc., and administered by the Prudential Insurance Company of America. It is undisputed that the employee welfare benefit plan in question is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*[1]

The plaintiff's complaint was removed to this court in accordance with 28 U.S.C. § 1441(b)[2] and § 1446.[3] Jurisdiction is predicated upon 28 U.S.C. § 1331[4] which provides that federal district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, and treaties of the United States. The federal statutes in question arise under ERISA, 29 U.S.C. § 1001, *et seq.*[5] On an earlier date,

---

1. 29 U.S.C. § 1002(1) defines an employee welfare benefit plan as follows:

 "... Any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, ..."

2. Title 28 U.S.C. § 1441(b) states as follows: Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

3. 28 U.S.C. § 1446(a) provides:

 "(a) A defendant or defendants desiring to remove any civil action ... from a State court shall file in the district court of the United States ... a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal ...
 (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, ..., of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, ...

4. Title 28 U.S.C. § 1331 states as follows: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

5. Title 29 U.S.C. § 1001 provides in part as follows:

 **(a) Benefit plans as affecting interstate commerce and the Federal taxing power**
 The Congress finds that the growth in size, scope, and numbers of employee benefit plans

this case was tried to the court sitting without a jury. Having heard the evidence and arguments of counsel, the court now announces its decision pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FACTS

The plaintiff, Andy Martin, was an employee of Service Merchandise Company and became covered under a policy of medical insurance provided by that company and administered by the Prudential Company of America on December 16, 1986. Martin's wife, Debbie Martin, became covered under the Service Merchandise plan pursuant to being Martin's dependent. Martin and his wife determined to have a child and relied upon the policy of insurance to cover the medical expenses attending such a decision. Andy Martin terminated his employment with Service Merchandise on July 17, 1987, after his wife had become pregnant. The Service Merchandise health care plan provided that benefits under the plan would terminate once an employee ceased to be an eligible associate, when the plan was discontinued, or when contributions to the plan ceased. The health care plan provided that one could continue medical bene-

fits temporarily if upon termination one had been covered under the plan for at least three months. The plan also provided that continuation of benefits would be permitted only if one did not become covered under another group plan.[6]

Martin was notified of the right under the Comprehensive Omnibus Reconciliation Act (COBRA)[7], Title 29 U.S.C. § 1161(a), to continue coverage at his own expense. Martin elected to continue coverage under COBRA on September 23, 1987. However, when Martin went to work for another employer, WSLI Radio, on October 1, 1987, he voluntarily accepted coverage under that company's group health plan. This new group plan, administered by Jefferson–Pilot Life Insurance Company, did not cover pre-existing conditions such as the pregnancy of Martin's wife.

Mrs. Martin suffered complications with her pregnancy. Medical bills totalling $16,769.24 were incurred. Benefits were paid by the Service Merchandise Health Care Plan for the expenses incurred prior to October 1, 1987, the date Andy Martin obtained coverage under the WSLI Radio plan, but no benefits were paid for expenses incurred after that date. On Febru-

---

in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations;

\* \* \* \* \* \*

**(b) Protection of interstate commerce and beneficiaries by requiring disclosure and reporting, setting standards of conduct, etc., for fiduciaries**

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

6. Relative to this matter the health care plan provided as follows:

TERMINATION OF BENEFITS—Benefits for you and your dependents will terminate if you cease to be an eligible associate or if the Plan is discontinued. Benefits for which contributions are required will terminate if you stop making contributions.

\* \* \* \* \* \*

A dependent's benefits will terminate when he (she) is no longer an eligible dependent.

\* \* \* \* \* \*

CONTINUANCE UPON YOUR TERMINATION—Upon termination, if you have been covered under the Plan for at least 3 months, you may continue medical benefits temporarily *if you do not become covered under another group plan.*

7. Title 29 U.S.C. § 1161(a) provides:

**(a) In general**

The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

ary 10, 1988, Service Merchandise notified Martin of its decision to discontinue coverage effective October 1, 1987.

Martin submitted claims for his wife's expenses to Jefferson–Pilot Life, but the claims were denied inasmuch as they related to a pre-existing pregnancy. Martin eventually obtained counsel and filed this lawsuit on behalf of himself and his wife in state court on August 15, 1989, against Service Merchandise and Prudential Life Insurance Company. The case was removed to this court within the time prescribed.

The complaint asserts five counts and one alternative count. The primary counts include tortious breach of contract, breach of a fiduciary duty, unfair settlement practices such as misrepresentation of policy provisions, fraud in the inducement, and violations of public policy and the provisions of COBRA. The alternative count deals with alleged violations of ERISA. The parties now agree that ERISA governs the disposition of the case.

## THE PLAINTIFFS' ARGUMENT IN SUPPORT OF COVERAGE UNDER THE SERVICE MERCHANDISE PLAN

Martin and his wife rely upon the Mississippi case of *Brown v. Blue Cross & Blue Shield of Mississippi*, 427 So.2d 139 (Miss. 1983), which held that a couple who had conceived a child while insured by the defendant's group policy would continue to be covered for pregnancy benefits even though the group policy was terminated after the onset of the pregnancy. The Mississippi Supreme Court reasoned that the defendant insurance company was estopped to cancel coverage as a matter of public policy after the onset of the event against which the plaintiffs had sought insurance. The Court cited *Keeton, Insurance Law Rights at Variance with Policy Provisions*, 83 Harv.L.Rev. 961, 967 (1970), an article on the doctrine of reasonable expectations which concludes that under such an approach plaintiffs facing the circumstances of the *Brown* case on account of such reasonable expectations should be entitled to continued coverage. Plaintiffs

argue that their case has kindred facts and deserves the same outcome since they (the Martins) engineered the pregnancy in reliance on the maternity benefits inherent in the policy and since the pregnancy occurred before Andy Martin terminated his position with defendant Service Merchandise Company.

The Martins additionally argue that estoppel may be predicated upon the defendants having already paid for some of the expenses incurred. Finally, according to the Martins, the Service Merchandise plan should cover the expenses in question because Debbie Martin obtained no new or additional coverage for her pregnancy when Andy Martin obtained coverage under the WSLI Radio/Jefferson–Pilot Life policy. Therefore, say the Martins, the issue of coverage should be resolved in their favor.

## THE DEPENDANTS' RESPONSE TO THE PLAINTIFFS' ARGUMENT

The defendants contend that the plaintiffs' continuation coverage was terminated because, in the defendants' view, the plaintiffs were no longer covered under the Service Merchandise plan once they obtained coverage through WSLI Radio. The defendants rely upon the terms of the policy:

CONTINUANCE UPON YOUR TERMINATION—Upon termination, if you have been covered under the Plan for at least 3 months, you may continue medical benefits temporarily *if you do not become covered under another group plan.*

The defendants also rely upon Section 602(2) of ERISA, 29 U.S.C. § 1162(2), which provides that:

"[Continuation] coverage must extend for at least a period beginning on the date of the qualifying event and ending not earlier than the earliest of the following:

(d) ... the date on which the qualified beneficiary first becomes, after the date of the election (i) a covered employee under any other group health plan ..."

Additionally, the defendants refer to the "Notice of Group Health Benefits Continu-

ation Privilege," a document signed by the plaintiffs when they elected to pay for continuation benefits under the Service Merchandise plan. This document provides, among other things, that:

"... [A]ny or all of your health care coverages can be continued until the earlier of:

... (b) the date on which you are covered under another group health plan ...

. . . . .

Coverage will not be continued beyond:

... (b) the date on which you are covered under another group health plan or are entitled to medicare."

The defendants further contend that they were not precluded from terminating coverage by the Mississippi case of *Brown v. Blue Cross, supra,* as argued by the plaintiffs, since state law is preempted by ERISA insofar as the plaintiffs' claim relates to an employee benefit plan. *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987). Defendants point to Section 514(a) of ERISA, 29 U.S.C. § 1144(a), which provides for preemption as follows:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ..."

*Also see Nevill v. Shell Oil Company,* 835 F.2d 209, 211–12 (9th Cir.1987); *Blau v. Del Monte Corporation,* 748 F.2d 1348, 1356 (9th Cir.1984); and *Hutchinson v. Benton Casing Service, Inc.,* 619 F.Supp. 831, 839 (S.D.Miss.1985), cases holding that state common law claims are preempted by ERISA. Therefore, say the defendants, the case of *Brown v. Blue Cross & Blue Shield of Mississippi, supra,* offers no guidance here.

## THE MATTER OF "VESTING"

Concerned that the contingency insured against in this instance had already taken place at the time the Service Merchandise plan was terminated and that "vesting" had occurred, the court directed the parties to submit supplementary briefs on the matter of the vested right of an insured to uninterrupted receipt of benefits once liability for a covered risk has been established.

The plaintiffs' supplemental argument upon the matter of vesting, just as was their initial argument with regard to coverage, relies upon the case of *Brown v. Blue Cross & Blue Shield of Mississippi, Inc., supra,* which held that, pursuant to public policy, an insurer remained liable for expenses related to the plaintiff's pregnancy which occurred while the group policy in question was still in force, but which were incurred after termination of the policy. *See also Murray v. Metropolitan Life Insurance Company,* 145 Miss. 266, 110 So. 660 (1926), and *Providence Hospital v. Morrell,* 431 Mich. 194, 427 N.W.2d 531, 533–34 (1988).

The plaintiffs contend that the substantive law of Mississippi should govern the disposition of this case as a matter of law and public policy. Therefore, argues the plaintiffs, claims for expenses incurred while the policy was in full force and during the period of continued benefits should be determined to be covered risks, and benefits should be paid, notwithstanding that Andy Martin obtained coverage under another policy when he changed employment.[8]

The defendants resubmit their contention that state law is preempted by ERISA as determined by the U.S. Supreme Court in *Pilot Life v. Dedeaux, supra.* Hence, says the defendants, any policy allowing vesting of benefits which is based upon state law does not apply in the instant case. The

---

**8.** The plaintiffs note that under the Omnibus Budget Reconciliation Act of 1989, obtaining coverage under a new plan will not terminate continuing coverage. The defendants respond and the plaintiffs agree that the amendment applies only to qualifying events after December 31, 1989. The plaintiffs' qualifying event, Andy

Martin's termination from Service Merchandise, occurred on July 17, 1987. Hence, the amendment, which would permit continuation coverage to remain in effect for the duration provided notwithstanding obtaining new coverage, does not apply in this case.

defendants contend that employee welfare benefit plans are not subject to Parts 2 and 3 of Title I of ERISA relating to participation, vesting and funding, *Spitzler v. New York Post Corp.*, 476 F.Supp. 386, 391 (S.D.N.Y.1979). The defendants further point out that there is no language in ERISA which provides for the accrual of benefits under employee welfare benefit plans or which guarantees that such benefits are vested or non-forfeitable.[9] *West v. Greyhound Corporation*, 813 F.2d 951, 954 (9th Cir.1987). Other authority cited by the defendants shows that Congress expressly exempted employee welfare benefit plans from the vesting, participation and funding requirements of ERISA. *Sejman v. Warner–Lambert Company, Inc.*, 889 F.2d 1346, 1348 (4th Cir.1989); *Anderson v. John Morrell & Company*, 830 F.2d 872, 876 (8th Cir.1987); *Blau v. Del Monte Corporation*, 748 F.2d 1348, 1352 (9th Cir.1984).[10]

The defendants argue that while pension plans are subject to the vesting provisions of ERISA, vesting of welfare benefits is a matter of contract. Since there is no mandatory vesting of welfare benefits pursuant to ERISA, according to defendants, parties may set out in the terms and conditions of plan documents whether welfare benefits vest and under what circumstances they may be terminated. *In re White Farm Equipment Company*, 788 F.2d 1186, 1193 (6th Cir.1986). Therefore, conclude the defendants, inasmuch as the

plaintiffs were insured by continuation coverage which, according to the terms of the policy, would cease once the insured obtained protection under another plan, the plaintiffs forfeited coverage when Andy Martin accepted coverage under another group health plan.

## CONCLUSIONS OF LAW

ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that are accumulated to finance various types of employee benefits. The statute contains elaborate provisions for the regulation of employee benefit plans. It sets forth reporting and disclosure obligations for plans, imposes a fiduciary standard of care for plan administrators,[11] and establishes schedules for vesting and accrual of employee pension plan benefits, but not employee welfare plan benefits. *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 1671, 104 L.Ed.2d 98 (1989); *Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985); *Sejman v. Warner–Lambert Company, Inc., supra; Anderson v. John Morrell & Company, supra; Blau v. Del Monte Corporation, supra; Adams v. Avondale Industries, Inc., supra.*

■ In the case *sub judice*, the court has first looked to federal law to determine whether there exists a federal policy with regard to the vesting of employee welfare

---

**9.** The defendants also refer to Section 1.162–26 of the Internal Revenue Service Proposed Regulations pertaining to continuation coverage noting that, according to this proposed regulation, continuing coverage under COBRA will end when a beneficiary is covered under any other group health plan, even if the coverage under the new plan is less valuable than the coverage the beneficiary qualified for under COBRA. Therefore, argue the defendants, the plaintiffs' coverage under the plan in question ceased when Andy Martin became covered by the group policy of his new employer notwithstanding that Mrs. Martin's pregnancy was an excluded pre-existing condition.

**10.** *See also Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir.1990), a case reviewing congressional intent as follows:

Although Congress considered imposing vesting requirements on welfare benefits, it decided to limit vesting to pension plans in order to keep costs within reasonable limits. ... Apparently Congress chose not to impose vesting requirements on welfare benefit plans for fear that placing such a burden on employers would inhibit the establishment of such plans.

**11.** While 29 U.S.C. § 1104 provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, ERISA does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued. *Adams v. Avondale Industries, Inc.*, 905 F.2d at page 948; *Phillips v. Amoco Oil Company*, 799 F.2d 1464, 1471 (11th Cir.1986), cert. denied, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

benefits. As stated above, welfare benefits are not subject to vesting. However, there is also no policy preventing an insurer from providing vested benefits. Therefore, the court has examined the documents creating the plan in question to determine whether vested benefits were intended. Precedent for this approach in ERISA cases may be seen in *United Paperworkers International Union, AFL–CIO, v. Champion International Corporation*, 908 F.2d 1252 (5th Cir.1990), a combination ERISA and Labor Management Relations Act case applying the traditional rules of contract law when reviewing a collective bargaining agreement.[12] The question before the court was whether an ERISA governed welfare benefit plan provided for fixed premium rates for retired employees' health benefits, or whether such fixed benefits could have been intended by the language of the plan. The Court first looked to federal labor policy regarding fixed health insurance premiums. Finding none, it stated as follows:

> The parties do not identify, and we have not found, any federal labor policy favoring or disfavoring fixed health insurance premiums for retirees. Therefore, we apply traditional rules of contract interpretation to determine whether the collective bargaining agreement provides for a fixed premium ...

Additionally, in *Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512, 1516 (8th Cir.1988), cert. denied, 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989), the Eighth Circuit was faced with collective bargaining agreement which had created an employee welfare benefit plan governed by ERISA. The federal district court had examined both contractual and extrinsic evidence to determine whether the bargaining parties intended to permit benefits of the employee welfare plan to vest and remain effective past the life of the collective bargaining agreement. One item of extrinsic evidence especially noted by the Eighth Circuit was a letter to the retired beneficiaries from the union president wherein he stated:

> ... There is nothing in the collective bargaining agreement itself, or in the Insurance and Health Agreement which guarantees retirees' benefits for life, nor is there any language in these agreements that talks about vesting of these benefits, and these benefits will expire of their own force on May 1, 1982. Pensions, unlike health and welfare benefits, are paid from an actuarially predetermined fund and are guaranteed for life. Health and welfare benefits are negotiated periodically and are paid for by the employer contributions and last only for the life of the collective bargaining agreement.

The Eighth Circuit accepted the district court's reliance upon the terms of the collective bargaining agreement and extrinsic evidence which tended to show that the parties had not entered into an agreement or understanding outside the terms of the collective bargaining agreement or the insurance and health agreement which would permit vesting of welfare benefits.

In another combination ERISA and Labor Management Relations Act case, *In re White Farm Equipment Company*, 788 F.2d 1186 (6th Cir.1986), the issue was whether, under ERISA, an employer could lawfully exercise a reserved power to terminate an employee welfare benefit plan for retired nonunion employees. The court looked first to the documents creating the plan in question, stating:

> First, we look to basic contract law. Despite any technical legal problems once

---

**12.** An example of the application of traditional rules of contract law to a collective bargaining agreement may be found in the case of *International Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir.1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), wherein a district court examined a collective bargaining agreement to find the intent to permit retiree benefits to continue beyond the life of the agreement; the Sixth Circuit stated that, "[m]any of the basic principles of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements." The Court went on to list, (1), looking to the explicit language for clear manifestations of intent, (2), the interpretation of each provision as a part of an integrated whole, (3), avoidance of illusory promises, and (4), clarification of ambiguities. *Id.* at page 1479–80.

present in the area of employment contract law, it is settled law that an employer and an employee may contract for post employment welfare benefits, and this court must, in this case as in *Yard-Man* [see citation at footnote 12] and the other collective bargaining cases, interpret the contract's terms.

*Id.* at page 1191.

Another case in point is that of *Smith v. ABS Industries, Inc.*, 890 F.2d 841 (6th Cir.1989). This case also involved an employee welfare benefit plan created by a collective bargaining agreement which was governed by ERISA. The district court concluded that these benefits could not be vested. However, the Sixth Circuit looked to the terms of the collective bargaining agreement, as well as extrinsic evidence, and reversed the district court citing several references in the plan and specific practices by the employer which supported the conclusion that the benefits in question had vested.

In *Ryan v. Chromalloy American Corp.*, 877 F.2d 598 (7th Cir.1989), where plaintiffs alleged that their retirement benefits, which constituted a welfare benefit plan under ERISA, vested upon their retirement, the court first noted that:

> ERISA requires that "[e]very employee benefit plan ... be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Through those instruments, the parties are free to subject such welfare benefits to vesting requirements not provided by ERISA, or they may reserve the power to terminate such plans. As the Sixth Circuit has stated in *Hansen v. White Farm Equipment Co.*, 788 F.2d 1186 (6th Cir.1986), "the parties may themselves set out by agreement or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated." *Id.* at 1193. *See also Musto v. American General Corp.*, 861 F.2d 897, 907 (6th Cir.1988), cert. denied, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

Then, after examining the trust documents which created the plan in question, the *Ryan* court concluded that the trust documents allowed defendant Chromalloy to terminate the trust since the trust document provided that the Trust would be terminated if all or substantially all of the assets of the employer were sold, and since that contingency had occurred.

After review of the foregoing authority, this court is persuaded that the case *sub judice* is most like the circumstance found in the *Ryan v. Chromalloy* case. The court in *Ryan* stated that if a district court found the pertinent provisions of a contract to be unambiguous, it should proceed to declare the meaning of those terms. *Ryan v. Chromalloy, supra,* at page 602. This approach is supported by those previously cited cases involving ERISA welfare plans and collective bargaining agreements which encourage looking to the language of the documents creating the plan and applying basic contract law in absence of any federal policy.

The court has reviewed the pertinent provisions of the Service Merchandise plan in question, the "Notice of Group Health Benefits Continuation Privilege" document which the plaintiffs were required to sign for continuation benefits under the Service Merchandise plan, and Section 602(2) of ERISA, 29 U.S.C. § 1162(2). It is clear from the provisions of the plan documents and the statute that the continuation coverage provided the plaintiffs under the Service Merchandise plan could be terminated once the plaintiff, Andy Martin, obtained coverage under another plan. That plaintiff, Debbie Martin, was not covered for a pre-existing pregnancy under the subsequent plan is of no moment since there is no language under ERISA, COBRA or the plan itself which would have permitted her continuation coverage to remain in effect after coverage under the WSLI Radio plan was obtained. As stated earlier in this opinion, the amendment to COBRA which would permit continuation coverage to remain in effect in this type situation did not become effective until 1989, too late to assist the plaintiffs in this instance.

**1180**

Finally, the plaintiffs claim estoppel because certain benefit payments under the Service Merchandise plan were made after October 1, 1987, the date Andy Martin obtained coverage under the WSLI Radio plan. The plaintiffs contend that as a consequence they had a right to expect continued payment of benefits under the Service Merchandise plan and that defendants are estopped to cancel same. Plaintiffs cite no authority for this position other than the case of *Brown v. Blue Cross & Blue Shield of Mississippi, Inc., supra.*

Plaintiffs' estoppel claim, like the plaintiffs' claims of tortious breach of contract, breach of fiduciary duty, unfair settlement practices, fraud in the inducement, and violation of Mississippi public policy, is a common law claim available under Mississippi law but which is preempted by ERISA. *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Blau v. Del Monte Corporation,* 748 F.2d 1348, 1356 (9th Cir. 1984). The parties agree that ERISA governs this case, so, inasmuch as ERISA preempts state common law claims, the plaintiffs' reliance upon state common law claims is without merit. Moreover, it is apparent that the defendants did not become aware of Andy Martin's other coverage under the WSLI Radio plan, obtained October 1, 1987, until sometime after the fact. Hence, the court is unpersuaded that estoppel should lie here or that the plaintiffs had any right to rely upon continued coverage notwithstanding the clear and unambiguous language of the Service Merchandise plan simply because there may have been some benefit payments made before the Service Merchandise plan became aware of Andy Martin's new coverage.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the plaintiffs' coverage under the Service Merchandise Health Care Plan ceased after October 1, 1987, the date Andy Martin obtained coverage under the WSLI Radio plan. The judgment of the court is for the defendants, Service Mer-chandise Company, Inc., and The Prudential Insurance Company of America.

SO ORDERED AND ADJUDGED.