**Greg CONERY, et al., Plaintiffs,**

**v.**

**BATH ASSOCIATES, et al., Defendants.**

**No. S88–469 (RLM).**

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 10, 1992.

John C. Hamilton, South Bend, Ind., for plaintiffs.

Robert J. Konopa, Margot Reagan, Joseph M. Forte, Edward N. Kalamaros, South Bend, Ind., Albert George, Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on summary judgment motions filed by various parties to this action. Plaintiffs Greg, Kevin, Sean, and Kelly Conery move for summary judgment against defendant Bath Associates ("Bath") and related defendants; Bath has moved for partial summary judgment against the Conerys; defendant Benefit Trust Life Insurance Co. ("BTL") has moved for summary judgment on claims against it by the Conerys and Bath; and third-party defendant Stop Loss International ("SLI") has moved for summary judgment on BTL's third-party claim against it. For the following reasons, the court finds that the Conerys' motion should be granted in part, Bath's motion should be granted in part, BTL's motion should be granted in part, and SLI's motion should be granted.

## I. PROCEDURAL HISTORY

This case concerns whether Greg Conery and his children were wrongfully denied insurance benefits, and who bears responsibility for any denial of benefits.

The plaintiffs initially brought this action under 29 U.S.C. § 1132 against Bath Associates, Greg Conery's former employer, for failing to give the plaintiffs notice of their right to elect continuation of insurance coverage following Mr. Conery's termination, and failing to continue the plaintiffs' health insurance coverage in accordance with the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.* Kevin, Sean, and Kelly Conery are Greg Conery's dependent children, who claim entitlement to continuing health benefits as qualified beneficiaries under 29 U.S.C. § 1167. The plaintiffs seek compensation for medical expenses incurred by Greg and Kevin Conery, as well as damages under ERISA's penalty provision, 29 U.S.C. § 1132, for failing to give the plaintiffs notice of their rights under COBRA.

On December 29, 1989, the plaintiffs moved for summary judgment on their complaint against Bath. On February 28, 1990, Bath countered with its own motion for partial summary judgment against the Conerys. At a scheduled hearing on the cross-motions in July 1990, plaintiffs' counsel orally moved to modify the scheduling order previously entered in the case to allow the plaintiffs to amend their complaint. In light of the plaintiffs' motion, the court adjourned the hearing and deferred ruling on the summary judgment motions.

The plaintiffs obtained leave to amend their complaint to add as defendants PBR Associates, Inc. and LTD Associates, corporate entities that were doing business as Bath Associates, and Benefit Marketing Group Inc., the division of PBR/Bath that employed Greg Conery (collectively referred to as the "Bath defendants"). The plaintiffs also joined as a defendant Benefit Trust Life Insurance Co., the insurance company which provided health and life insurance under the Bath insurance plan. Count I of the amended complaint asserted that the Bath defendants and BTL deprived the Conerys of their COBRA benefits during a fifteen-month period beginning in June 30, 1987. In Count II, the Conerys alleged that the Bath defendants failed to fulfill their notice obligations under COBRA.

On February 21, 1991, the Bath defendants amended their pleadings to include a cross-claim against BTL, alleging that BTL should be held solely responsible both for any failure to provide coverage and for any failure to provide notice to the plaintiffs of their rights under COBRA as alleged in Counts I and II of the Conerys' amended complaint. No summary judgment motion has been filed with respect to this cross-claim. BTL then cross-claimed against Bath, alleging that Bath was solely responsible for any failure to provide notice or failure to provide coverage under COBRA. BTL then achieved the joinder of Stop Loss International, a subsequent employer and insurer of Greg Conery, claiming that SLI was responsible for providing Mr. Conery with health insurance during the period in question under the terms of SLI's health insurance plan, and further alleging that SLI fraudulently induced Mr. Conery to seek payment of his medical claims from BTL by misrepresenting to BTL the scope of SLI's insurance coverage.

On June 15, 1992, BTL moved for summary judgment on the claims against it by the Conerys and Bath. On June 18, 1992, SLI moved for summary judgment on BTL's third-party claim. A hearing was held on all pending summary judgment motions on September 8, 1992, and the motions are now ripe for ruling.

## II. STANDARD OF REVIEW

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Duane v. Lane,* 959 F.2d 673, 675 (7th Cir.1992). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists only

when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.,* 915 F.2d 316, 320 (7th Cir.1990); *Hines v. British Steel Corp.,* 907 F.2d 726, 728 (7th Cir. 1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The parties cannot rest on mere allegations in the pleadings, *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991), or upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir. 1992). The court must construe the facts as favorably to the non-moving party as the record will permit, *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991); *Soldal v. County of Cook,* 923 F.2d 1241, 1245 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Prince v. Zazove,* 959 F.2d 1395, 1398 (7th Cir.1992), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Kizer v. Children's Learning Center,* 962 F.2d 608, 611 (7th Cir.1992).

The court will address the pending motions with the above standards in mind.

### III. FACTS

In May 1987, Greg Conery was employed by Benefit Marketing Group ("BMG") as that corporation's president. Mr. Conery was also a director and shareholder of BMG. He was asked to leave his employment at BMG amid allegations of financial impropriety. According to the Bath defendants, Mr. Conery was misappropriating company funds for his own use. Mr. Conery and BMG entered into an agreement in which Mr. Conery agreed to surrender his interest in the company for a small fee and not to compete professionally with BMG. BMG agreed to keep the circumstances of the dismissal confidential and agreed to release Mr. Conery from any and all claims of the corporation existing as of the effective date of the agreement.

Mr. Conery contends that implicit in the agreement's terms was the understanding that Mr. Conery would be afforded the right to continue his health insurance coverage pursuant to COBRA as offered through Bath Associates. Although Mr. Conery's departure from BMG was effective May 22, the agreement was not finalized until August. Based on the terms of the Bath Group Insurance Plan ("Bath insurance plan") and the agreement, Mr. Conery's benefits under the plan terminated on June 30, 1987.

Glenda Lamont, an employee of Bath Associates, claims that on June 15, 1987 she sent Mr. Conery notification of his right to continue coverage under the Bath insurance plan. The form letter advised Mr. Conery that under the provisions of the plan he was eligible to continue coverage under the plan for a period of eighteen months at his own expense because of "voluntary or involuntary termination of employment (other than for 'gross misconduct') or reduction in hours." The notice instructed Mr. Conery to complete the attached form and submit a premium check within forty-five days if he wished to elect continuation coverage. Ms. Lamont mailed the notice to Mr. Conery at 16168 Chandler Street, Mishawaka, IN 46544. Mr. Conery states that did not receive the notice. Bath received no response from Mr. Conery within forty-five days; as a result, Bath told its insurance carrier, BTL, to delete Mr. Conery and his dependents from coverage under the Bath insurance plan.

By letter dated July 28, 1987, Mr. Conery's attorney, Richard Morgan, informed Bath's attorney, Charles Sweeney, of Mr. Conery's understanding that he would be entitled to COBRA benefits under the terms of the termination agreement. On August 28, 1987, Mr. Morgan sent an executed copy of the termination agreement to Mr. Sweeney. Mr. Morgan's cover letter

informed Mr. Sweeney that Mr. Conery had not received a letter advising him of his rights under COBRA.

Mr. Newman, Ms. Lamont's superior, was on vacation when Ms. Lamont claims she sent Mr. Conery his COBRA notice. When Mr. Newman received a copy of Mr. Morgan's letter of August 28, he questioned Ms. Lamont why notice had not been sent to Mr. Conery. When Ms. Lamont informed Mr. Newman that she sent notice on June 15, he was upset because at that time negotiations were still ongoing with respect to Mr. Conery's severance agreement. Mr. Newman understood that Mr. Conery was entitled to COBRA benefits under the severance agreement, and that Mr. Conery would be sent notice after the agreement was finalized. He asked Ms. Lamont to follow up on the June 15 notice and send a copy of the notice to Mr. Morgan to show that Bath had sent a COBRA notice.

In a letter dated September 3, 1987, Ms. Lamont informed Mr. Morgan that notice was sent to Mr. Conery on June 15 and that Bath had received no response from Mr. Conery regarding his desire to elect continuation coverage under the Bath insurance plan.

On September 10, 1987, Bath received a letter from Mr. Conery, along with a completed election form and a check for the annual premium for health insurance for himself and his dependents. Mr. Conery continued to pay premiums to Bath over the next few months. Bath cashed each of those checks, but did not forward any payments to BTL. In a letter dated October 24, Ms. Lamont requested that BTL reinstate Mr. Conery's coverage under the Bath insurance plan with no lapse in coverage, and further asked BTL to review any bills submitted by Mr. Conery that previously had been denied to determine if Mr. Conery was entitled to reimbursement. In a separate letter, also dated October 24, Ms. Lamont informed Mr. Conery that Bath had received his premium checks and had written to BTL regarding the "screw up on your COBRA letter."

On January 11, 1988, BTL responded to Ms. Lamont's October 24 request. BTL's Joan Mayfield indicated that BTL refused to reinstate Mr. Conery's insurance coverage. Ms. Mayfield indicated that BTL had no obligation to provide coverage because Mr. Conery failed to elect coverage within the required time. According to BTL's records, Bath had provided notice as required by COBRA on June 15, and Mr. Conery had not responded within the proper time. Ms. Mayfield also noted that BTL showed no premium payments from Mr. Conery on its premium files and directed Ms. Lamont to return Mr. Conery's premium check. On February 3, 1988, Ms. Lamont sent a refund to Mr. Conery and informed him that BTL was denying coverage.

On October 1, 1987, Mr. Conery became employed by SLI. He was a participant under SLI's group insurance plan from October 1, 1987 until December 2, 1988, when he became a COBRA participant under the SLI plan. Although Mr. Conery was eligible for coverage under the SLI plan on October 31, 1987, the SLI plan contained a pre-existing conditions clause that excluded coverage for medical conditions for which the covered person had received treatment within twelve months preceding the effective date of coverage under the SLI plan. The pre-existing conditions clause did not apply if the covered person received no treatment for three consecutive months after the SLI plan's effective date, and did not apply after the covered person had been covered under the SLI plan for twelve months (Deft's Exhibit B, p. 22). Both before and during the term of his employment with SLI, Mr. Conery suffered from diabetes and various complications associated with diabetes. At no time did he go for three months without receiving treatment for his diabetes, due to his daily insulin requirements.

Mr. Conery and his son Kevin incurred significant medical expenses after October 31, 1987. Although Mr. Conery submitted many claims to SLI and SLI paid those claims, he did not submit to SLI claims in the amount of $19,160.72; as to these claims, Mr. Conery sought payment from BTL rather than SLI. According to BTL,

Mr. Conery submitted these claims to BTL because SLI misinformed Mr. Conery and BTL that these expenses were not covered under the SLI plan.

The Bath insurance plan contains a coordination of benefits provision that sets out rules for taking coverage provided by other plans into account when paying benefits under the terms of the Bath plan. This provision gives BTL the right to obtain information from other insurance companies necessary for the coordination of benefits without obtaining consent of the insured.

## IV. APPLICABLE LAW

This case concerns a dispute over the parties' rights and obligations under COBRA. The COBRA amendments to ERISA were enacted in response to "reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 241, 99th Cong., 2d Sess. 44, *reprinted in* 1986 U.S.C.C.A.N. 42, 579, 622. To help remedy this problem, Congress amended ERISA to require all plan sponsors of group health insurance plans to provide continuation coverage under their plans. 29 U.S.C. § 1161(a).

Under COBRA, continuation coverage is available to "qualified beneficiaries"; qualified beneficiaries include employees and their dependents. 29 U.S.C. § 1167(3). One of several "qualifying event[s]" must occur for a qualified beneficiary to receive continuation coverage. *See* 29 U.S.C. § 1163. Termination of employment for any reason other than gross misconduct is one of the qualifying events that entitles an employee to receive continuation coverage. 29 U.S.C. § 1163(2). When a qualifying event, such as termination, occurs, the employer must notify the plan administrator of the qualifying event within thirty days; the administrator then has fourteen days after it receives notice (or longer if specified in the plan itself) in which to notify the qualified beneficiaries of their right to receive continuation coverage. 29 U.S.C. § 1166.

A qualified beneficiary has at least sixty days after the termination of coverage under a benefit plan to elect continuation coverage. 29 U.S.C. § 1165(1). A qualified beneficiary must be afforded sixty days from the later of the termination of coverage or the receipt of notice to elect continuation coverage. 29 U.S.C. § 1165(1). A qualified beneficiary's election of continuation coverage is effective as to any other qualified beneficiary who would lose coverage by virtue of the same qualifying event. 29 U.S.C. § 1165(2) (i.e., Greg Conery's election is effective as to his children). The maximum length of time a plan must provide continuation coverage to employees who are terminated is eighteen months from the date of the qualifying event. Continuation coverage may terminate earlier if the qualified beneficiary fails to make timely premium payments, 29 U.S.C. § 1162(2)(C), or if the qualified beneficiary becomes covered under another group health plan. 29 U.S.C. § 1162(2)(D)(i).

## V. ANALYSIS

### A. The Conerys' Motion for Summary Judgment

The Conerys contend that the undisputed facts demonstrate that Mr. Conery complied with all relevant provisions of COBRA and was entitled to receive continuation coverage under the Bath insurance plan as alleged in Count I of their complaint. The Conerys also contend that Bath failed to give them notice of their right to continuation coverage, in violation of 29 U.S.C. § 1166(a)(4)(A), as alleged in Count II. Bath contends that the Conerys are not entitled to continuation coverage because Mr. Conery was terminated for gross misconduct, and further contends that it had no obligation to provide continuation coverage because it provided the Conerys with adequate notice of their right to elect continuation coverage but the Conerys failed to elect continuation coverage in a timely manner.

Since the Conerys filed their summary judgment motion, they have amended

Count I of their complaint to add as defendants the various corporate entities associated with Bath Associates. At the hearing on the motion, the Conerys' counsel informed the court that the motion applies to all the Bath defendants collectively.

### 1. Count I: Failure to Provide Coverage

■ The duty to afford qualified beneficiaries the right to elect continuation coverage under COBRA falls on the plan sponsor. 29 U.S.C. § 1161(a). In this case, Bath is the plan sponsor as defined in 29 U.S.C. § 1002(16)(B)(i) ("the employer [is the plan sponsor] in the case of an employee benefit plan established or maintained by a single employer").

#### a. Gross Misconduct

■ Bath contends that no duty to provide coverage arose because Mr. Conery was terminated for embezzling company funds. Mr. Conery disputes the allegations of gross misconduct against him and further contends that regardless of the truth of the allegations, the severance agreement signed by the parties conclusively establishes Mr. Conery's entitlement to COBRA benefits.

29 U.S.C. § 1163(2) provides that an employee's termination for any reason other than gross misconduct constitutes a "qualifying event" which entitles an employee and his beneficiaries to elect continuation coverage. The court believes that the allegations levied against Mr. Conery (misappropriating company funds), if true, would constitute gross misconduct and would relieve Bath of its COBRA obligations had Mr. Conery been terminated due to his alleged wrongdoing. Mr. Conery contends that proof of "gross misconduct" should be required to rise to the level of the criminal standard, beyond a reasonable doubt, before COBRA benefits may be terminated; he argues further that the evidence of his alleged wrongdoing does not rise to that level. Bath responds that the appropriate inquiry should be whether the employer acted on a good faith belief that the employee engaged in gross misconduct. The court leans toward the test proposed by

Bath, but need not decide this legal issue under the facts of this case.

The record before the court demonstrates that although Mr. Conery's misconduct may have precipitated his separation from BMG/Bath, Bath specifically agreed to allow Mr. Conery to resign rather than terminate him for gross misconduct, and further agreed to provide Mr. Conery with COBRA coverage. Regardless of whether Mr. Conery committed acts which could constitute gross misconduct, the severance agreement, as well as Bath's actions following Mr. Conery's separation from BMG, shows that BMG/Bath agreed to allow Mr. Conery to resign and retain the right to elect continuation coverage.

The severance agreement itself makes no mention of any misconduct or financial impropriety by Mr. Conery, and is silent as to the specific reason for Mr. Conery's separation from BMG. Under the severance agreement's written terms, Mr. Conery agreed to resign from his employment at BMG. The agreement states that it was "occasioned by virtue of certain differences that have arisen between Corporation and Employee." In consideration for Mr. Conery's resignation, BMG agreed to release him from any and all claims of the corporation existing on the date of the agreement.

Bath argues that the court cannot look solely at the severance agreement and ignore all that preceded it, while the Conerys argue that the parol evidence rule precludes the court from considering anything other than the agreement. The court need adopt neither position. What preceded the agreement indicates that BMG had positions with respect to termination, but voluntarily chose not to take those positions. Instead, Mr. Conery resigned.

Letters written by Mr. Morgan, Mr. Conery's attorney, indicate that Mr. Conery and Mr. Morgan believed that Mr. Conery would be entitled to COBRA benefits. Bath has presented no evidence of a contrary understanding on the part of BMG/Bath. Mr. Sweeney, Bath's attorney, states that the severance agreement was not intended to address the issue of Mr. Conery's right to COBRA benefits, and ne-

gotiations regarding COBRA benefits occurred separate from the negotiations related to the severance agreement. Mr. Sweeney acknowledges, however, that Bath agreed to provide COBRA benefits to Mr. Conery.

Mr. Newman of Bath also acknowledges that, at some point, Bath agreed to provide COBRA benefits to Mr. Conery. Bath's conduct following Mr. Conery's departure also indicates Bath's intent to provide COBRA benefits and to waive any allegations of gross misconduct. Bath claims to have sent Mr. Conery a letter notifying him of his right to elect continuation coverage on June 15, 1987. When Bath learned that Mr. Conery said he never received the June 15 notice, Bath sent him another notice. After Mr. Conery elected coverage and sent in his premium checks, Bath unsuccessfully tried to get BTL to reinstate coverage. Bath never indicated to Mr. Conery, until this lawsuit, that it intended to deny coverage due to Mr. Conery's gross misconduct. To the contrary, all of the evidence before the court shows that the parties specifically agreed that Mr. Conery would be afforded the opportunity to exercise his rights under COBRA. Bath has offered no legal basis why it should not be held to its bargain.

### b. Timeliness of Election

Bath next contends that no duty to provide continuation coverage arose because Mr. Conery failed to elect coverage in a timely manner. Mr. Conery asserts that he and his family were entitled to COBRA benefits because he elected coverage within the time period provided by 29 U.S.C. §§ 1165 and 1162(2)(C). The court agrees with Mr. Conery that under any version of the facts before the court, he elected coverage in a timely manner under COBRA and should have been afforded coverage.

Regardless of whether Mr. Conery received notice of his COBRA rights on or shortly after June 15, he elected continuation coverage in a timely fashion. Under 29 U.S.C. § 1165(1), he had sixty days from the later of the date coverage terminated under the Bath insurance plan or the date

in which he received notice of his COBRA rights in which to elect continuation coverage.

If the letter Ms. Lamont allegedly sent on June 15 did not fulfill Bath's notification obligations, Mr. Conery elected coverage in a timely fashion. If Mr. Conery did not receive adequate notice via the June 15 letter, he did not receive notice of his COBRA rights until approximately September 5, and elected continuation coverage on September 10, well within sixty days from the receipt of notice of his right to elect coverage.

■ Even if the June 15 letter provided adequate notice, Mr. Conery elected coverage in a timely fashion. Mr. Conery's coverage under the Bath insurance plan terminated on June 30, 1987. Therefore, Mr. Conery had at least sixty days from that date in which to elect coverage, regardless of whether notice was sent on June 15. See 29 U.S.C. § 1165(1)(A). On July 28, day twenty-eight of the sixty day period, Mr. Morgan sent a letter to Bath's attorney indicating that Mr. Conery desired continuation coverage. On August 28, Mr. Morgan sent a letter to counsel advising that Mr. Conery had not yet received a notice from Bath regarding continuation coverage. The court agrees with the Conerys that these letters fulfilled Mr. Conery's obligation to elect coverage within the sixty day election period.

Bath argues that Mr. Conery made no timely election of benefits because Bath did not receive a completed election form until after September 10, 1987. Nothing in COBRA's provisions, however, specifies the manner in which an employee or qualified beneficiary must elect continuation coverage, and nothing before the court suggests why the letters to counsel did not constitute sufficient notice to Bath of Mr. Conery's intent to elect coverage for himself and his children. The two letters unambiguously indicated Mr. Conery's intent to elect coverage, and both were sent to an agent of Bath within the sixty-day election period afforded by 29 U.S.C. § 1165(1)(A).

Bath makes no mention of Mr. Morgan's letters in its response to the Conerys' mo-

tion and does not directly dispute the Conerys' contention that Mr. Conery elected coverage through those letters. Bath's implicit argument is that election is only effective if done via the form provided by the plan administrator, but nothing in the statute suggests that election is effective only if done via the form provided by the administrator. Accordingly, even if Bath gave Mr. Conery adequate notice on June 15, Bath cannot contend that Mr. Conery failed to elect coverage in a timely fashion.

### c. Conclusion

In summary, the court finds that the Conerys have shown that Mr. Conery was entitled to elect continuation coverage under the Bath insurance plan and elected coverage within the election period. Therefore, the Conerys are entitled to prevail on Count I of their complaint against Bath. Whether Bath must bear this liability alone and whether Bath has any right of contribution from BTL is discussed below in the court's analysis of BTL's motion for summary judgment.

### 2. Count II: Failure to Provide Notice

In Count II of their complaint, the Conerys contend that Bath is liable for failing to provide them with timely notice of their right to elect continuation coverage as required by 29 U.S.C. § 1166. The Conerys seek reimbursement from the Bath defendants for medical expenses incurred, as well as statutory penalties under 29 U.S.C. § 1132(c).

### a. Notice to Greg Conery

Bath contends that it sent a notification to Mr. Conery at his address on Chandler Street in Mishawaka on June 15, 1987; Mr. Conery contends that he never received this notice.

■ 29 U.S.C. § 1166(a)(2) is silent on the manner in which notice of COBRA eligibility must be communicated. Courts that have considered the issue, however, have determined that a good faith attempt to comply with a reasonable interpretation of the provision is sufficient. *Phillips v. Riverside*, 796 F.Supp. 403, 408 (E.D.Ark.

1992); *Jachim v. KUTV, Inc.*, 783 F.Supp. 1328 (D.Utah 1992); *Truesdale v. Pacific Holding Co.*, 778 F.Supp. 77, 81–82 (D.D.C. 1991); *Dehner v. Kansas City Southern Industries, Inc.*, 713 F.Supp. 1397, 1400 (D.Kan.1989). Thus, the precise issue raised by the notice requirements of 29 U.S.C. § 1166(a)(2) is not whether Mr. Conery received notice, but rather whether Bath caused notice to be sent in a good faith manner reasonably calculated to reach Mr. Conery. *Jachim v. KUTV*, 783 F.Supp. at 1334. An employer generally complies with § 1166(a) by sending notice by first class mail to the last known address of an employee. *See Id.*

■ Glenda Lamont claims she mailed Mr. Conery a COBRA notice. Based on an unsigned file copy of the notice contained in Bath's records, Ms. Lamont believes she sent the notice on June 15. The file copy of the notification letter contains a space for Mr. Newman's signature, but the file copy is unsigned. Mr. Newman claims he was unaware that a COBRA notice was sent on June 15 and that Ms. Lamont sent the notice without his authorization while he was on vacation. Ms. Lamont knew that Mr. Conery changed addresses at some point in time, but cannot remember exactly when she learned that new address. She speculated that Mr. Conery must not have received the notice because the post office failed to forward the notice to his new address. The COBRA election form Mr. Conery signed on September 10 indicates, however, that as of that date he still resided at the Chandler Street address. A letter from Mr. Conery to Ms. Lamont dated October 15 indicates that some time between September 10 and October 15 Mr. Conery moved to a new address.

Based on the foregoing evidence, questions of fact remain as to whether Bath fulfilled its notice obligations. Ms. Lamont claims she mailed the letter, and Bath has a file copy of a letter dated June 15 to Mr. Conery. Drawing all reasonable inferences in Bath's favor, a jury could find that Ms. Lamont mailed the letter as she said. Although certain inconsistencies in the evidence call into question Ms. Lamont's mem-

ory and credibility, and call into question the adequacy of Bath's procedures for sending COBRA notices, these inconsistencies do not warrant a finding in the plaintiffs' favor at the summary judgment stage.

### b. Notice to the Conery Children

█ Kevin, Sean, and Kelly Conery contend that regardless of whether their father received notice, they are entitled to summary judgment on Count II of their complaint because the undisputed facts show that they never received individual notices of their right to elect coverage under COBRA. Bath admits that it never mailed separate notices to Mr. Conery's children, but contends that the notice it sent to Mr. Conery on June 15 was effective as to his children as well. Mr. Conery's oldest son, Kevin, was away at college; son Sean lived at the Chandler Street address; and daughter Kelly lived with her mother. Nothing before the court, however, indicates whether Mr. Conery or his children ever notified Bath that they lived at any place other than the Chandler Street address.

29 U.S.C. § 1166(c) provides that notification to an individual who is a qualified beneficiary as the spouse of the covered employee shall be treated as notification to all other qualified beneficiaries residing with the spouse at the time the notification is made. 29 U.S.C. § 1165 provides that an election of coverage by one qualified beneficiary includes an election of continuation coverage on the part of any other qualified beneficiary. The statute is silent, however, as to whether notification to an individual who is a qualified beneficiary as a covered employee constitutes notification to qualified beneficiaries residing with the covered employee.

Bath contends that sending notice to a covered employee constitutes sufficient notice to all other qualified beneficiaries with the same last known address. The court agrees.

█ Under the "good faith" standard courts have adopted for determining whether an employee complied with CO-BRA notice provisions, the notice that Bath allegedly sent to Mr. Conery on June 15 was reasonably calculated to inform his children of their right to elect COBRA benefits. Despite the lack of a specific statutory provision, if Mr. Conery received notice on June 15, common sense dictates that notice would have been effective as to his children as well. No evidence before the court suggests that Bath knew or should have known that Kevin and Kelly did not live with their father.

The notice that Bath allegedly sent to the Chandler Street address was sufficient to give Mr. Conery notice that coverage was available for his dependents as well as himself. The notification letter indicated that coverage cost $169.46 for more than one person, and the application form requested a social security number for each applicant. The letter, if received, would have put the Conerys on notice that coverage was not limited to Mr. Conery himself. Given the form of the notice, no purpose would be served by requiring a separate mailing to each individual beneficiary or requiring a separate form for each beneficiary. A single notice sent to a household containing more than one beneficiary is reasonably calculated to inform all qualified beneficiaries living at that address of their COBRA rights if the notice allows all beneficiaries to elect coverage. *See Jachim v. KUTV*, 783 F.Supp. at 1334. The notice at issue, if received, constituted sufficient notice to all members of the Conery family whose last known address was the Chandler Street residence.

### 3. Remaining Issues Under the Complaint

█ The Conerys have moved for summary judgment on their entire complaint; therefore, the court must briefly address the relief sought. The appearance of several additional defendants since the plaintiffs filed their motion complicates the issue of damages. The Conerys request damages equal to their medical expenses during the fifteen-month period beginning June 15, 1987 which should have been covered by the Bath insurance plan, plus inter-

est against all the applicable defendants based on their respective share of responsibility, and further request the imposition of a statutory penalty under 29 U.S.C. § 1132(c), and reasonable attorney fees. Because the Conerys effectively elected continuation coverage, they are entitled to reimbursement for medical expenses incurred during the fifteen-month period beginning June 15, 1987 which should have been covered under the Bath insurance plan. However, for reasons discussed more fully below, material questions of fact preclude any allocation of responsibility among the defendants at this stage. Similarly, questions of fact regarding whether Bath failed to provide adequate notice and who bears ultimate responsibility for the Conerys' loss of coverage precludes the court from making any determination as to liability for statutory penalties or attorney fees.

### B. Bath Associates' Motion for Summary Judgment

Bath seeks partial summary judgment on the Conerys' claim for punitive damages and attorney fees, and further moves for summary judgment on the claims of Sean and Kelly Conery.

In their response to Bath's motion, the Conerys indicated that they were no longer seeking punitive damages apart from the statutory penalties available under 29 U.S.C. § 1132(c). Accordingly, Bath's motion for summary judgment on the Conerys' punitive damage request is denied as moot.

With respect to the Conerys' claim for attorney fees, as discussed in Part V(A) above, unresolved questions of fact regarding responsibility for the Conerys' lack of continuation coverage, as well as unresolved issues of fact as to whether Bath gave the Conerys adequate notice of their COBRA rights, preclude summary judgment for either side.

■■■■ With respect to the claims of Sean and Kelly Conery, the court agrees with Bath that they have incurred no medical expenses and suffered no loss by virtue of their lack of COBRA coverage. According-

ly, Bath is entitled to summary judgment on the claims of Sean and Kelly for benefits under Count I of the amended complaint. Questions of fact still remain, though, as to whether Bath failed to provide them with adequate notice of their COBRA rights. The possibility exists that Sean and Kelly may be entitled to recover statutory penalties pursuant to 29 U.S.C. § 1132(c). Penalties may be imposed by the court under this section regardless of whether the plaintiffs suffered any loss by virtue of the lack of notice. Accordingly, Bath is not entitled to summary judgment on the claims of Sean and Kelly Conery for statutory penalties under Count II of the plaintiffs' amended complaint.

### C. The Motion for Summary Judgment of Benefit Trust Life Insurance Co.

BTL appears to seek summary judgment against both the Conerys and Bath. In its motion, BTL reiterates Bath's arguments in opposition to the Conerys' initial motion for summary judgment against Bath. BTL also contends that even if Bath is liable to the Conerys, there is no basis on which to hold BTL responsible for any failure to provide benefits or failure to provide notice under COBRA.

#### 1. Gross Misconduct

Like Bath, BTL contends that no duty to provide continuation coverage because Mr. Conery was terminated for gross misconduct, and also contends that Bath fulfilled any notice requirements that it had. As discussed previously, regardless of the reasons behind Mr. Conery's termination of employment, Bath agreed to provide him with COBRA benefits and agreed to keep the circumstances of his termination confidential.

■■■ BTL makes the additional argument that even if Bath is bound by the terms of the severance agreement and could not refuse to provide continuation coverage, the termination agreement does not bind BTL because it was not a party to that agreement. Although BTL may not be strictly obligated under the severance

agreement, it has obligations under its Group Insurance Contract with Bath ("Bath insurance contract"), which obligates BTL to provide continuation coverage to terminated Bath employees who elect such coverage. The Bath insurance contract, like the provisions of COBRA, provides an exception for employees terminated for gross misconduct, but nothing in the Bath insurance contract gives BTL discretion to determine the reasons why Bath terminated an employee.

BTL argues that a side agreement between an employer and an employee that conflicts with the interests of a third party insurer should not be allowed. Regardless of whether, as some have suggested, litigation has become too pervasive in modern American society, it cannot seriously be maintained that the avoidance of litigation contravenes public policy. Bath (itself the plan sponsor) entered in the severance agreement to avoid potential litigation concerning the basis for Mr. Conery's severance. The plain language of the statute provides an exception for employees terminated for gross misconduct, not for employees who could have been terminated for gross misconduct. Neither the statute nor public policy supports BTL's position.

Bath agreed not to terminate Mr. Conery for gross misconduct; BTL has offered no persuasive reason why that agreement would not obligate BTL to provide coverage under the terms of the Bath insurance contract.

## 2. Notice

BTL next argues that it is not liable for any failure to provide notice to the Conerys of their right to elect continuation coverage. The court agrees with the narrow proposition that BTL is not liable for any failure to provide notice *per se*.[1] Under 29 U.S.C. § 1166(a)(4), the plan administrator has the duty of providing notice to qualified beneficiaries. In the absence of any designation in the plan itself, the administrator is defined as the "plan sponsor". 29 U.S.C. § 1002(16)(A)(ii). In this case, the plan sponsor is Bath Associates, not BTL. *See* 29 U.S.C. § 1002(16)(B). The Bath insurance contract also provides that the employer (Bath) must notify qualified beneficiaries of their right to elect continuation coverage. Bath, not BTL, had the duty to provide notice to the Conerys; therefore, BTL cannot be subject to statutory penalties under 29 U.S.C. § 1132(c)(1). However, that BTL had no obligation to notify the Conerys of their COBRA rights does not absolve BTL from any duty it may have had to provide insurance coverage under the provisions of COBRA or the Bath insurance contract.

## 3. Unpaid Premiums

BTL next contends that Bath's failure to forward Mr. Conery's insurance premiums to BTL absolves it of any duty to provide continuation coverage to the Conerys. The circumstances surrounding Bath's failure to remit premium payments, as well as the terms of the Bath insurance contract, suggest otherwise.

In her October 24 letter, Bath's Ms. Lamont informed BTL that Mr. Conery did not receive the COBRA notice sent by Bath on June 15, and that Mr. Conery promptly requested continuation coverage and sent his premium to Bath once he received a copy of the notice. Ms. Lamont requested that Mr. Conery be reinstated on Bath's insurance plan with no lapse in coverage.

In a letter dated January 11, 1988, Joan Mayfield of BTL indicated that BTL refused to reinstate Mr. Conery's coverage. According to BTL, it was not obligated to provide coverage because the information BTL had received indicated that Bath did provide proper notice and the former employee (Mr. Conery) failed to elect coverage in time. BTL reached this conclusion de-

---

1. It is possible that the Conerys also agree. In their amended complaint, the Conerys did not sue BTL for failing to provide notice; BTL is not named as defendant under Count II of the Conerys' amended complaint. The Conerys only sued BTL under Count I for failing to provide coverage. The Conerys allege that BTL had a duty to provide coverage and is liable as a fiduciary for failing to provide coverage; they do not allege that BTL is liable as an employer for failing to provide notice.

spite Ms. Lamont's October 24 letter indicating that Mr. Conery never received the June 15 notice. Because BTL was refusing coverage, Ms. Mayfield asked that Bath return Mr. Conery's premium check.

These facts permit the inference that any failure to remit premiums was caused by BTL's failure to respond timely to Bath's request that Mr. Conery be reinstated. In October, Bath indicated that it had received premium payments and indicated that it wished Mr. Conery to be reinstated. BTL did not respond until January, and when it did respond it refused to reinstate coverage and refused to accept the premiums.

The insurance contract's terms suggest that BTL had no right to refuse coverage by virtue of Bath's failure to remit premiums under the circumstances of this case. Part VIII, ¶ D of the contract (p. 209.1) provides that:

> Clerical error by the Employer or Assured shall not invalidate coverage of a person insured. This includes errors in enrolling, recording or reporting for coverage purposes. Any premium not paid because of the error must be paid at the time the error is corrected.

This provision suggests that BTL could not refuse coverage due to non-receipt of premiums if non-receipt was due to a clerical error. Neither party has addressed the foregoing provision, but the court believes that the provision's plain language as applied to the facts before the court suggests the possibility that BTL's refusal to provide coverage violated this provision.

Making all reasonable inferences in favor of the non-moving parties (Bath and the Conerys), the record suggests that BTL refused coverage due to a clerical error on the part of Bath in violation of the express terms of its contract. Accordingly, based on the limited record currently before it, the court cannot find that Bath's failure to remit premiums to BTL excused BTL from providing insurance for Mr. Conery.

### 4. Subsequent Coverage

 BTL further contends that any obligation it had to provide continuation coverage under COBRA ceased on October 31, 1987 when Mr. Conery became covered under the insurance plan provided by his subsequent employer, SLI. During the time relevant to this suit, 29 U.S.C. § 1162(2)(D)(i) provided that continuation coverage would terminate on the date the qualified beneficiary first becomes "covered under any other group health plan (as an employee or otherwise)." Mr. Conery became covered under the SLI health plan on October 31, 1987, but the SLI plan specifically excluded coverage for pre-existing conditions during the first year of coverage. Under this clause, Mr. Conery could not receive coverage under the SLI plan for his diabetes-related medical expenses during the first year of coverage. Therefore, although Mr. Conery was covered under the SLI plan, the coverage was incomplete.[2]

BTL contends that under the 1987 version of COBRA, the gap in the coverage under the SLI plan caused by the pre-existing condition clause did not obligate BTL to provide Mr. Conery with insurance coverage after October 31, 1987. In support of this contention, BTL points to *Martin v. Prudential Insurance Co.*, 776 F.Supp. 1172 (S.D.Miss.1991), which held that the wife of an employee covered under COBRA was not entitled to COBRA coverage for her pre-existing condition after becoming covered under another employer's plan, even though the new employer's plan excluded pre-existing conditions from coverage. The *Martin* court noted that the 1989 amendments to COBRA expressly required that continuation coverage be provided in such instances, but found that this amendment came too late to assist the plaintiffs. BTL requests that the court follow the reasoning of *Martin* and find that any obligation to provide continuation coverage by BTL expired on October 31. The court declines this request.

The *Martin* decision is contrary to the clear weight of authority. Circuit courts

---

**2.** BTL raises a separate argument that the SLI plan's pre-existing condition exclusion should not have applied to Mr. Conery. The court addresses that argument below.

addressing the pre–1989 language of 29 U.S.C. § 1162(2)(D)(i) have interpreted the statute to entitle an employee to receive continuation coverage under the previous employer's plan in cases where the employee becomes covered under a pre-existing group health plan if a significant gap in coverage exists between the two plans. *See National Companies Health Benefit Plan v. St. Joseph's Hosp.*, 929 F.2d 1558, 1571 (11th Cir.1991); *Brock v. Primedica, Inc.*, 904 F.2d 295 (5th Cir.1990); *Oakley v. Longmont*, 890 F.2d 1128 (10th Cir.1989) (interpreting identical language in Public Health Service Act). The language in the cited appellate decisions constitute *dicta*, but the court finds the reasoning behind that language to be persuasive. As the Eleventh Circuit noted in *National Companies*, 929 F.2d 1558, an employee is entitled to continuation coverage when such a gap in coverage exists because:

> [I]n that situation, the employee is not truly "covered" by the preexisting group health plan, as that term is used by Congress to effectuate its intent; the employee, despite his other coverage, will be liable personally for substantial medical expenses to his and his family's detriment. Denying continuation coverage in that setting would serve to frustrate, rather than foster, Congress' clear intentions.

Although Mr. Conery obtained coverage under the SLI plan on October 31, he did not become "covered" as that word is used in the statute for his substantial diabetes-related expenses. SLI had no obligation to provide coverage for his pre-existing condition; absent continuation coverage, Mr. Conery would incur the type of medical expense Congress sought to avoid through COBRA.

BTL argues that because the 1989 amendment to COBRA specifically provides for continuation coverage when an employer becomes covered under another plan with a pre-existing conditions clause, the prior version of the statute, by implication, did not require coverage to continue once the employee became covered under another plan regardless of any gaps in coverage. Other than the *Martin* case, BTL cites no authority for the proposition that the 1989 amendment changed the law.

The 1989 amendment did not change the law; it merely clarified Congress' original intent. The amendment further emphasized Congress' concerns that group health plan participants and their dependents not be placed in a situation in which they suffer a gap in the character of coverage as the result of a qualifying event such as termination of employment. *Brock v. Primedica*, 904 F.2d at 297; H.R.Rep. No. 101–247, 101st Cong., 1st Sess. 1452–1453, *reprinted in* 1989 U.S.C.C.A.N. 1906, 2922–23. Therefore, the court concludes that any obligation of Bath and/or BTL to provide continuation coverage for Mr. Conery's diabetes-related expenses did not terminate on October 31, 1987.

5. Claims of Sean and Kelly Conery

BTL contends that the claims of Sean and Kelly Conery should be dismissed since they did not incur any medical bills during the time period relevant to the suit. The court agrees that their claims against BTL should be dismissed.

As noted above, the Conerys' claims against BTL are premised on a failure to provide COBRA benefits, not on a failure to provide notice of COBRA election rights. 29 U.S.C. § 1132 provides for the imposition of civil penalties for failing to provide notice as required under 29 U.S.C. § 1166(a)(4), but BTL may only be held liable for failing to provide benefits because the obligation to provide notice fell on Bath, not BTL. Because neither Sean nor Kelly suffered any actual damages due to a denial of coverage, their claims against BTL should be dismissed.

6. Continued Coverage; Vicarious Liability

Finally, BTL requests summary judgment on any claim against it that is premised on a theory of vicarious liability for Bath's actions. The court agrees that the Conerys cannot proceed against BTL under a vicarious liability theory, but disagrees with BTL to the extent it argues

that no grounds exist by which it may be liable to the Conerys.

The Conerys, through affidavits submitted in response to BTL's summary judgment motion, suggest that Bath received preferential treatment from BTL and somehow was an exclusive agent for BTL. Greg Conery asserts that during his employment Bath was a general agent for one of BTL's subsidiaries, Star Mark, which marketed small group medical health plans. Mr. Conery asserts that Bath or one of its subsidiaries obtained exclusive marketing rights within the State of Indiana as to Star Mark's insurance. Greg Conery also asserts that Bath, because of its close relationship with BTL, received a commission override in excess of normal premium commissions. The Conerys assert that because of the "incestuous relationship" between Bath and BTL, BTL is just as liable under COBRA as Bath is.

BTL has moved to strike the affidavits of Greg Conery and Michael Kolodziej, which contain allegations concerning the "relationship" between Bath and BTL. For reasons discussed below, the court does not believe the allegations contained in the affidavits are material to the dispute before the court, and the court refrains from addressing the merits of the motion to strike.

Taken as a whole, the allegations concerning the business connections between Bath and BTL merely suggest that Bath, in its business as insurance broker, received preferential treatment from BTL and sold a lot of BTL insurance. The Conerys cite no legal basis for their theory that this relationship gives rise to vicarious liability under ERISA. Each of the relationships described by Mr. Conery involves Bath's relationship to BTL as a broker of BTL's insurance policies. In the present case, Bath was not acting as an insurance broker selling a BTL group health insurance plan. Rather, in the context of this case, Bath was acting as a purchaser of a group insurance plan from BTL, and the terms of the insurance contract and the provisions of ERISA define the relationship between Bath and BTL for purposes of this case.

Under ERISA, BTL may be liable if it acted as a fiduciary and breached its fiduciary duty to the Conerys. *See* 29 U.S.C. § 1109. Under ERISA, a person is a fiduciary with respect to a plan to the extent he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A). That Bath received preferential treatment from BTL in its capacity as insurance broker does not establish that BTL had discretionary authority or responsibility under the Bath insurance plan. The court finds no basis on which to hold BTL liable for Bath's actions based on the "relationships" alleged by Mr. Conery. The allegations concerning the relationship between Bath and BTL raise no question of material fact as to whether BTL acted as a fiduciary under the Bath insurance plan.

Nonetheless, apart from the vicarious liability theory, significant questions of fact exist as to whether BTL is liable to the Conerys as a fiduciary under the Bath insurance plan. To determine whether BTL may be liable as a fiduciary under ERISA, the court must look to whether BTL has discretionary authority under the insurance contract. When a contract grants an insurer discretionary authority, the insurer may be a fiduciary. *Ed. Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732 (7th Cir.1986). Moreover, Department of Labor regulations provide that if claims are reviewed by an insurance company, service, or organization, such entity is a fiduciary for ERISA purposes. 29 C.F.R. § 2560.503–1(g)(2). The terms of the insurance contract between Bath and BTL suggest that BTL was the party responsible for reviewing insurance claims; hence, BTL might be subject to liability as a fiduciary under ERISA for denying Mr. Conery's claims. None of the motions presently before the court specifically address whether BTL is liable to the Conerys as a fiduciary under ERISA. Accordingly, whether BTL was a fiduciary and whether it breached any fiduciary duty involve questions of fact that await further development.

### 7. Attorney Fees

BTL has moved for summary judgment on the Conerys' claim for attorney fees. 29 U.S.C. § 1132(g)(1) allows district courts to award attorney fees to prevailing parties in suits under ERISA. The factual disputes outlined above preclude any finding as to prevailing party status; accordingly, BTL's motion for summary judgment on the Conerys' claim for attorney fees is denied.

### D. The Motion for Summary Judgment of Stop Loss International

BTL filed a third-party complaint/cross-claim against SLI alleging that Mr. Conery and his children were covered under SLI's plan effective October 1, 1987, and that SLI, not BTL, is obligated to pay the medical expenses incurred by the Conerys after October 1, 1987. In Count I of their third-party complaint/cross-claim, BTL alleges that SLI breached its fiduciary duty to Mr. Conery by failing to pay his insurance claims, and that this breach of duty damaged or potentially damaged BTL by causing Mr. Conery to bring suit against BTL. In Count II, BTL claims that SLI defrauded Mr. Conery and BTL by misrepresenting the scope of SLI's insurance coverage, thereby causing Mr. Conery to file claims with BTL rather than SLI. BTL seeks indemnification and/or contribution, compensatory damages, and punitive damages.

SLI contends it is entitled to summary judgment because BTL lacks standing to sue under ERISA. It further contends that even if BTL has standing, SLI has no liability under ERISA because it has reimbursed Mr. Conery for any claims which fell within the terms of SLI's coverage and had no duty to provide coverage on the claims which Mr. Conery submitted to BTL. The court finds that BTL has standing to sue as fiduciary, but that its claims against SLI fail on their merits.

### 1. Standing

██ SLI first contends that BTL lacks standing to sue SLI under ERISA. SLI points out that under 29 U.S.C. § 1132 only participants, beneficiaries, the Secretary of Labor, or fiduciaries have standing to sue, and contends that BTL fits none of these categories. The court disagrees.

The Conerys and Bath both allege that BTL acted as a fiduciary under the Bath insurance plan and that BTL breached its fiduciary duty. BTL's complaint against SLI is premised on the assumption that BTL is liable as a fiduciary. BTL argues that if it is liable as a fiduciary, it may sue as a fiduciary under 29 U.S.C. § 1132(a)(2).

Under the law of this circuit and the terms of the Bath insurance plan, if BTL qualifies as a fiduciary under ERISA, it has standing to sue in its fiduciary capacity to determine whether it or SLI had a duty to provide coverage under the terms of the SLI plan. Pursuant to 29 U.S.C. § 1132(a)(3), a fiduciary may bring an action to enjoin any act or practice which violates the terms of its employee benefit plan. The plain language of 29 U.S.C. § 1132(a)(3) suggests that a fiduciary may sue to enforce its own plan, but grants no authority for a fiduciary to bring an action against another fiduciary to enforce the terms of the defendant fiduciary's plan.

The Seventh Circuit has recognized, however, that in certain instances an ERISA fiduciary may sue another fiduciary for declaratory relief as to which fiduciary has an obligation to provide coverage on an insurance claim. Winstead v. J.C. Penney Co., Inc., 933 F.2d 576 (7th Cir.1991). Under the reasoning of Winstead, the coordination of benefits provision contained in the Bath insurance plan gives BTL standing to sue for what, in essence, it claims is a breach of the SLI plan by SLI. See 933 F.2d at 583. BTL's coordination of benefits provision contains procedures for taking other benefit plans into account when paying benefits under the BTL plan. The effect of such a provision is to incorporate all plans and policies that duplicate the coverage provided by the plaintiff plan. Id.[3] Accordingly, under the reasoning of

---

**3.** Unlike Winstead, which involved a suit for declaratory relief only, BTL in its claim seeks indemnification and/or contribution and compensatory and punitive damages. However,

*Winstead,* BTL may bring its claim against SLI as a means of enforcing the coordination of benefits provision contained in the Bath plan. *Id.*

2. Merits of the Third–Party Complaint

BTL has standing to contend that SLI is obligated to pay the insurance claims which Mr. Conery contends BTL should have paid, but BTL's contention is without merit. BTL has failed to present evidence that SLI was obligated to provide coverage to the Conerys on any of the claims that the Conerys contend BTL should have paid.

▪ At issue in BTL's claim against SLI are medical expenses incurred by Mr. Conery for treatment of his diabetes. SLI contends that although Mr. Conery became covered under the SLI plan on October 31, 1987, the pre-existing conditions clause contained in the SLI plan excluded coverage for any expenses incurred due to his pre-existing diabetic condition for the first year he was covered under the SLI plan. BTL does not directly dispute the pre-existing conditions clause's validity or application to Mr. Conery's diabetes-related expenses, but contends that Mr. Conery's claims fall under an exception to the pre-existing conditions clause contained in the SLI plan. The relevant portion of that exception reads as follows:

EXCEPTION TO THE PRE–EXISTING CONDITION

The exclusion of coverage due to the above Pre–Existing Condition provision of the Plan shall be modified to the following extent for those persons covered on the Effective Date of the Plan and covered on the immediately preceding day under the policy this Plan replaced, whether such policy replaced was written by an insurer or under a similar but not insured plan:

A. If the Covered Person incurs expense which would be eligible for payment hereunder except for the Pre-

existing Conditions provision and such expense would have been eligible for payment under the policy replaced had that policy been continued in force rather than replaced by this Plan, the Company agrees to pay the lesser of the amount thus payable for such expenses under:

1. The policy replaced, and
2. This plan disregarding the Pre–Existing Conditions provision.

BTL interprets this exception to apply to Mr. Conery, but gives no basis for its interpretation.

SLI effectively refutes BTL's strained interpretation of this provision. Before adopting the self-funded plan that contains the foregoing provision, SLI was covered under a fully insured plan by a group health insurance policy. The purpose of the exception to the pre-existing conditions clause was to insure that SLI employees covered by the prior SLI plan did not suffer a gap in coverage by virtue of the pre-existing condition clause. Hence, the SLI plan contains an exception to the pre-existing condition provision for those people covered on the effective date of the (SLI) plan and covered on the immediately preceding day under the policy the (SLI) plan replaced. The SLI plan's effective date was August 1, 1986. Mr. Conery was not covered under the SLI plan on that date; he did not become covered under the SLI plan until October 31, 1987. Therefore, the exception clause does not apply to him.

▪ Because the pre-existing conditions clause applies to Mr. Conery without exception, SLI had no obligation to pay claims arising from diabetes-related medical expenses incurred during Mr. Conery's first year under the SLI plan. Moreover, Mr. Conery never submitted any of his diabetes-related claims to SLI; he submitted them to BTL. Thus, the SLI plan provisions regarding notice of claims and proof of loss would appear to bar an attempt to

---

BTL seeks to hold SLI liable for insurance claims BTL has not yet paid; therefore, BTL's action is declaratory in nature. To the extent BTL seeks indemnification for expenses incurred in defending the Conerys' suit, the court

questions whether those expenses are properly recoverable. However, the court need not decide this issue because, as discussed below, BTL's claim against SLI fails on the merits.

seek reimbursement for these claims from SLI. BTL contends that SLI misrepresented the scope of its insurance coverage to BTL and/or Mr. Conery, and these misrepresentations both excuse Mr. Conery's failure to file any notice of claims with SLI and also constitute actionable fraud. BTL's theory apparently is that SLI misrepresented the scope of its coverage and this misrepresentation caused Mr. Conery to file his claims with BTL rather than SLI.

The record does not support this theory. The record indicates that Mr. Conery and SLI both legitimately believed that the SLI plan did not cover his diabetes-related bills. Contrary to BTL's assertions, the plain language of the SLI plan corroborates this belief. Accordingly, SLI is entitled to summary judgment on all counts of BTL's third-party complaint/cross-claim. BTL's claim that SLI breached its duty by failing to pay Mr. Conery's diabetes-related medical bills must fail because SLI had no duty to cover the disputed claims, and no such claims were submitted to SLI in a timely fashion.

## VI. CONCLUSION

Based on the foregoing, the court hereby orders that:

A. The Conerys' motion for summary judgment is GRANTED IN PART and DENIED IN PART as follows:

 (1) the motion is GRANTED with regard to the Conerys' entitlement to receive continuation coverage under the provisions of COBRA;

 (2) the motion is DENIED with respect to the Conerys' claim for statutory penalties for failing to provide notice under COBRA; and

 (3) the motion is DENIED with respect to the Conerys' claim for attorney fees.

B. The motion for partial summary judgment of Bath Associates is GRANTED IN PART and DENIED IN PART as follows:

 (1) the motion is GRANTED with respect to the claims of Sean and Kelly Conery under Count I of the plaintiffs' amended complaint; and

 (2) the motion is DENIED in all other respects.

C. The motion for summary judgment of Benefit Trust Life Insurance Co. is GRANTED IN PART and DENIED IN PART as follows:

 (1) the motion is GRANTED with respect to the Conerys' claims for statutory penalties under 29 U.S.C. § 1132(c)(1) for failing to provide notice under COBRA;

 (2) the motion is GRANTED with respect to the claims of Sean and Kelly Conery;

 (3) the motion is GRANTED with respect to any claim of vicarious liability for acts and/or omissions of the Bath defendants; and

 (4) the motion is DENIED as to the remainder of the claims against BTL.

D. Stop Loss International's motion for summary judgment is GRANTED.

SO ORDERED.