16 F.3d 1226
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Gerald C. VICKERS, Plaintiff-Appellant,
v.
Scott MELLINGER, Doris Maxey and Pat Lakey, R.N.,
Defendants-Appellees.
 No. 93-1988.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 19, 1994.*
Decided Jan. 21, 1994.
 
 Before CUMMINGS, KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Gerald Vickers filed a civil rights action against the defendants pursuant to 42 U.S.C. Sec. 1983 for alleged Fourteenth Amendment violations occurring during his pretrial detention at the Madison County Jail.[1] Specifically, he contended that he was forcibly administered anti-psychotic medication, and that he was housed in a cell next to the "pink room" where mentally deranged and violent prisoners were kept for short periods of time. As a result of his housing assignment, he experienced terror, tension and psychiatric problems. The district court granted defendants' summary judgment motion. We review de novo, McGann v. Northeast Illinois Regional Commuter R.R. Corp., 8 F.3d 1174, 1178 (7th Cir.1993), and affirm for the reasons stated in the attached district court Memorandum and Order, noting that Anderson v. Creighton, 483 U.S. 635 (1987), supports the grant of qualified immunity.
 
 
 2
 On page four the district court states that "[e]ven after Riggins [ Riggins v. Nevada, 112 S.Ct. 1810 (1992) ], ... no 'clearly established' rule can be identified to inform a government official as to when the administration of medication is involuntarily [sic]." Anderson focuses our inquiry on whether it was objectively legally reasonable for the nurse to conclude that Vickers consented to the administration of antipsychotic drugs. 483 U.S. at 641. Because the nurse's belief was reasonable, she is entitled to qualified immunity.
 
 
 3
 AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF INDIANA
 SOUTH BEND DIVISION
 
 4
 Gerald C. Vickers, Plaintiff,
 
 
 5
 v.
 
 
 6
 Scott Mellinger, et al., Defendants.
 
 Cause No. S92-473M
 MEMORANDUM AND ORDER
 
 7
 The plaintiff and the defendants each seek summary judgment on plaintiff Gerald Vickers' complaint. Fed.R.Civ.P. 56. Mr. Vickers contends that his Fourteenth Amendment rights were violated when, while he was a pretrial detainee, the defendants required him to take antipsychotic medicine against his will and housed him a cell near another cell in which mentally deranged prisoners were kept. He seeks an award of damages pursuant to 42 U.S.C. Sec. 1983, and an order dismissing the defendants from their jobs. The court has jurisdiction pursuant to 28 U.S.C. Sec. 1343. For the reasons that follow, the court concludes that the defendants are entitled to judgment as a matter of law.
 
 
 8
 A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.
 
 
 9
 The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law.
 
 
 10
 Conery v. Bath Associates, 803 F.Supp. 1388, 1392-1393 (N.D.Ind.1992) (citations omitted).
 
 
 11
 The record before the court demonstrates that the defendants are entitled to qualified immunity on the claim concerning the administration of antipsychotic medication. The qualified immunity defense protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitgerald, 457 U.S. 800, 818 (1982). Officials' actions are objectively unreasonable, and hence outside the scope of qualified immunity, only if the right allegedly violated was clearly established in a sufficiently particularized sense at the time of the conduct in question. Anderson v. Creighton, 483 U.S. 635, 639 (1987); Hall v. Ryan, 957 F.2d 402, 404 (7th Cir.1992). A defendant is entitled to the qualified immunity defense if at the time of the conduct, it was not clearly established that the conduct violated the constitution. Siegert v. Gilley, 111 S.Ct. 1789, 1793 (1991).
 
 
 12
 Mr. Vickers was a pretrial detainee facing criminal charges. He was found incompetent to stand trial, remanded to a state hospital, and then returned to the county jail after having been found to have regained sufficient comprehension to stand trial. The state hospital psychiatrist who reported Mr. Vickers' regained competency specified that Mr. Vickers' then-existing medication level should be maintained until trial.
 
 
 13
 On March 20, 1992, while on his way to court, Mr. Vickers was taken to jail nurse Pat Lakey for his medication. According to Ms. Lakey's affidavit, Mr. Vickers said he did not need his medication; Ms. Lakey said the court had said he needed to take his medication; Mr. Vickers said if Ms. Lakey thought he should take his medication, he would go ahead and do so; Mr. Vickers then lowered his pants voluntarily, and Ms. Lakey administered the shot.
 
 
 14
 Mr. Vickers' complaint alleges a slightly different version of the events. Ordinarily, a party cannot rest upon his pleadings in opposing a summary judgment motion, Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir.1991); McCarthy v. Kemper Life Ins. Companies, 924 F.2d 683, 687 (7th Cir.1991), but in light of the ambiguous response to these allegations in the defendants' answer, the court believes it appropriate to consider Mr. Vickers' complaint. See Sivard v. Pulaski County, 959 F.2d 662 (7th Cir.1992). Mr. Vickers alleges that when he entered Ms. Lakey's office, she said that she had been told that Mr. Vickers hadn't been taking his medication, and that she was going to give him a shot; Mr. Vickers responded, "What if I refuse the shot?"; Ms. Lakey replied, "You can't refuse it. I've got a court order." Ms. Lakey then administered the shot without any physical resistance by Mr. Vickers.
 
 
 15
 On March 20, 1992, Ms. Lakey should have known of the decision in Washington v. Harper, 494 U.S. 210 (1990), which held that inmates have a liberty interest in refusing antipsychotic medication, although such medication may be required over inmates' objection if due process requirements are met, and the due process requirements can be satisfied without a formal court proceeding. Ms. Lakey could not have known of Riggins v. Nevada, 112 S.Ct. 1810 (1992), a case not decided until May 18, 1992. In Riggins, the Court held that antipsychotic drugs could be administered to an objecting defendant during a criminal trial only if the trial court first found that there were no less intrusive alternatives, that the medication was medically appropriate, and that the medication was essentially for the safety of the defendant or others.
 
 
 16
 Even after Riggins, however, no "clearly established" rule can be identified to inform a government official as to when the administration of medication is involuntarily. That issue posed no problem in Riggins or Harper; the defendant in Riggins had filed a motion in court requesting the cessation of his Mellaril, and the inmate in Harper triggered the state's procedural mechanisms for objection. Mr. Vickers, however, never raised any objection of that sort. According to Ms. Lakey, he said he did not need his medication, not that he did not want it; according to Mr. Vickers, he simply asked what would happen if he refused, but he did not refuse.
 
 
 17
 Thus, even assuming Mr. Vickers had, two months before Riggins, a clearly defined right to refuse, absent specific court findings, the involuntary administration of antipsychotic medicine prescribed to maintain competency to stand trial, a reasonable government official in Ms. Lakey's position could not have known that her injection of Mr. Vickers violated that right. Without a refusal, Mr. Vickers had no right to be free from administration of the medication. Ms. Lakey is entitled to summary judgment based on qualified immunity.
 
 
 18
 Mr. Vickers' complaint alleges that he was placed in a room within the jail next to another room known as the "pink room". It appears from the record before the court that the "pink room" is a room used for short durations when a highly violent, abusive, or uncontrollable inmate becomes a threat to others. Mr. Vickers was not placed in the pink room in 1991 or 1992, but was placed in another of the rooms of the infirmary, which contains the pink room. Doris Maxey, the Madison County jail commander, states that "Mr. Vickers has a history of violence and mental illness and could not function with the general population, thus the need to place him in the infirmary." Mr. Vickers does not claim to have been the direct victim of the pink room violence, but contends that exposure to the violence of the pink room caused his mental condition to deteriorate.
 
 
 19
 No provision of the Constitution protects inmates or pretrial detainees from overhearing the tumult and travails of guards attempting to deal with unruly inmates. There is no allegation that Mr. Vickers was housed in the same cell with dangerous persons, or that his safety was compromised. Jail officials have a constitutional obligation to safeguard pretrial detainees' persons, but not their sensibilities. The "pink room" allegations simply state no claim upon which relief can be granted, and the defendants are entitled to judgment on that claim.
 
 
 20
 Finally, the claims against Sheriff Mellinger must fail. A defendant can be held liable under Sec. 1983 in his individual capacity only if he caused or participated in the constitutional deprivation; a "causal connection, or an affirmative link" between the conduct and the defendant must exist. Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983). The allegations against the sheriff seek to hold him liable simply as the supervisor of others who allegedly violated Mr. Vickers' constitutional rights. He cannot be liable simply as a supervisor.
 
 
 21
 For the foregoing reasons, the court now GRANTS the defendants' summary judgment motion and DENIES the plaintiff's summary judgment motion. Judgment shall be entered for the defendants.
 
 
 22
 SO ORDERED.
 
 ENTERED: April 7, 1993
 
 23
 /s/ Robert L. Miller, Jr.
 
 Robert L. Miller, Jr., Judge
 United States District Court
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Although Vickers alleged that the actions violated the Eighth Amendment, claims of pretrial detainees are properly scrutinized under the Due Process Clause. Bell v. Wolfish, 441 U.S. 520, 535 and n. 16 (1979); Kinney v. Indiana Youth Center, 950 F.2d 462, 465 (7th Cir.1991), cert. denied, 112 S.Ct. 2313 (1992). The Eighth Amendment is applicable only if the plaintiff is a convicted criminal